COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RUEL NEWBERRY, | § | No. 08-10-00062-CV |
| Appellant, | § | Appeal from the |
| v. | § | 171st Judicial District Court |
| | § | |
| BRISA NEWBERRY, | | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC#2008CM1548) |
| | § | |

**O P I N I O N**

Appellant appeals a final divorce judgment, arguing that the evidence at trial was legally insufficient to support a finding of cruelty, legally and factually insufficient to support a finding of adultery, and that the division of the community estate was disproportionate to him.

Mr. Ruel Newberry and Ms. Brisa Newberry were married on September 1, 2002. Before marriage, they entered into a prenuptial agreement. After living in Tucson, Arizona for some years, where Appellee earned a Master's in Business Administration, and Appellant worked as an engineer, they moved to El Paso, Texas after Appellee's father, Victor Villalobos ("Mr. Villalobos") offered each of them jobs. They owned a home in Arizona and bought a second house in El Paso on Oscar Perez Avenue.

Appellee filed for divorce on March 5, 2008. Appellant filed a general denial, and then a counterpetition. In his counterpetition, he sought a disproportionate division of the community estate based on fault grounds, among others.

The trial court held a hearing on this matter on various dates from March 2009 through

September 2009, and at the end of trial, the court declared the parties divorced. The trial court

rendered judgment on October 6, 2009, entering a judgment in final divorce/annulment and a

final divorce decree on January 28, 2010. In its final decree, the court granted Appellee divorce

from Appellant "on the grounds of insupportability, adultery and cruelty." Upon Appellant's

request, the court filed findings of fact and conclusions of law on March 8, 2010 to support its

judgment. In its findings of fact, the trial court determined in part:

> 5.  The legitimate ends of the marriage between Petitioner and Respondent had been destroyed because Respondent, Ruel Newberry, committed adultery during the marriage and because Ruel Newberry was guilty of cruel treatment towards Brisa Newberry, which renders the parties further living together insupportable and such behavior by Respondent prevents any reasonable expectation of reconciliation. In addition thereto, the marriage of Petitioner and Respondent had become insupportable because of discord and conflict of personalities that destroyed the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

On February 19, 2010, Appellant filed his notice to appeal the court's judgment.

In his first two issues, Appellant challenges the legal and factual sufficiency of the

evidence to support the adultery finding and the legal sufficiency of the evidence to support the

cruelty finding, which were the bases for the disproportionate award of the martial estate going to

Appellee.

When reviewing the record to determine whether there is legally sufficient evidence to

support the judgment, we examine only the evidence and inferences that support the verdict.

*Minnesota Min. and Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 738 (Tex. 1997); *Henry v.*

*Henry*, 48 S.W.3d 468, 474 (Tex.App.--Houston [14th Dist.] 2001, no pet.). If more than a

scintilla of evidence exists to support the lower court's finding, the legal sufficiency challenge

fails. *Minnesota Min. and Mfg. Co.*, 953 S.W.2d at 738; *Henry*, 8 S.W.3d at 473. "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Henry*, 48 S.W.3d at 473, *citing Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). In a factual sufficiency review, we examine all the evidence in the record, both for and against the lower court's findings, and reverse only if it is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

Appellant asserts the trial court erred in finding that he committed adultery based only on Appellee's testimony that he was in a room with his high school sweetheart with the door closed and lights off for more than twenty minutes. He claims that "[g]iven the motive of Brisa to fabricate an adultery claim (going through a divorce involving the disputed division of thousands of dollars of property and liabilities) and circumstances under which this evidence was acquired (just before Appellant and Appellee separated), very little weight should be given to this sparse and nebulous testimony." Appellant concludes that because the trial court erred in granting Appellee a divorce on the fault ground of adultery, we should remand this case in order for the trial court to reconsider its division of the community estate.

Adultery can be shown by circumstantial evidence. *See Morrison v. Morrison*, 713 S.W.2d 377, 380 (Tex.App.--Dallas 1986, writ dism'd). At trial, Appellee testified Appellant admitted to her that when he attended a party at a friend's house, he went into a room with his high school sweetheart, Liza, and stayed in there with her with the doors closed and lights off for more than twenty minutes. She testified that this happened after she and Appellant had ceased being sexually intimate. Appellant testified that he never did anything wrong outside of the

marriage, but admitted that he viewed pornography online because Appellee had refused to have sex. We defer to the fact finder's determination with regard to credibility and weight to be given their testimony, and conclude that the evidence was legally and factually sufficient to support the trial court's finding of adultery as a basis for the divorce. *See* TEX.FAM.CODE ANN. § 6.704(b) (West 2006); *see Morrison*, 713 S.W.2d at 380 (concluding adultery can be shown by circumstantial evidence).

In Issue One, Appellant contends that Appellee was not entitled to a divorce on the fault ground of cruelty because the evidence was legally insufficient to support this finding. The sufficiency and weight of the evidence necessary to prove cruelty under the trial court's standard of proof must, of necessity, be left to the sound discretion of the trier of fact. *In re Marriage of Rice*, 96 S.W.3d 642, 648 (Tex.App.--Texarkana 2003, no pet.). We shall not disturb the trial court's finding of cruelty absent abuse of discretion. *Id*. at 648. In a divorce proceeding, one party's testimony may alone be sufficient to support the judgment. *Henry*, 48 S.W.3d at 474 (finding husband's testimony, by itself, would support trial court's judgment and therefore no abuse of discretion); *Ingram v. Ingram*, 376 S.W.2d 888, 888–89 (Tex.Civ.App.--Waco 1964, no writ)(wife's uncorroborated testimony satisfies test for sufficiency).

Appellant argues that the court erred in concluding that he engaged in "cruelty" based on the sole evidence in the form of Appellee's testimony that "she caught Ruel on several occasions viewing pornographic materials and masturbating" as he did so. He argues that this conduct at most showed that he was suffering from a psychological condition or disorder, which required professional treatment, and not that he "willfully inflicted suffering on his wife." According to Appellant, the evidence does not support a finding that he engaged in cruel treatment of Appellee

-4-

because there was nothing "willful" about his conduct. Appellant's complaint, again, goes to fault as a basis for the disproportionate property division.

Although infrequent since the introduction of no-fault divorce, a Texas court may still grant a divorce on the ground of cruel treatment. *Henry*, 48 S.W.3d at 473. A spouse's conduct rises to the level of cruel treatment when his or her conduct renders the couple's living together insupportable. *Id*., *citing* TEX.FAM.CODE ANN. § 6.002; *Finn v. Finn*, 185 S.W.2d 579, 582 (Tex.Civ.App.--Dallas 1945, no writ). "Insupportable" means "incapable of being borne, unendurable, insufferable, intolerable." *Henry*, 48 S.W.3d at 473-74, *citing Cantwell v. Cantwell*, 217 S.W.2d 450, 453 (Tex.Civ.App.--El Paso 1948, writ dism'd). Mere disagreements or trifling matters will not justify granting a divorce for cruelty. *Shankles v. Shankles*, 445 S.W.2d 803, 807 (Tex.Civ.App.--Waco 1969, no writ). If, for instance, the complaining spouse suffers only nervousness or embarrassment, a trial court may not grant the divorce on the ground of cruelty. *Golden v. Golden*, 238 S.W.2d 619, 621 (Tex.Civ.App.--Waco 1951, no writ). Abuse need not be limited to bodily injury; nonetheless, physical abuse will support granting a divorce on cruelty grounds. *Waheed v. Waheed*, 423 S.W.2d 159, 160 (Tex.Civ.App.--Eastland 1967, no writ); *Cote v. Cote*, 404 S.W.2d 139, 140 (Tex.Civ.App.--San Antonio 1966, writ dism'd); *Blackburn v. Blackburn*, 163 S.W.2d 251, 255 (Tex.Civ.App.--Amarillo 1942, no writ). Acts occurring after separation may be used to support a finding of cruelty. *Redwine v. Redwine*, 198 S.W.2d 472, 473 (Tex.Civ.App.--Amarillo 1946, no writ).

Adultery may be considered to be cruelty sufficient to support the grant of a divorce on that ground. *Winkle v. Winkle*, 951 S.W.2d 80, 90-1 (Tex.App.--Corpus Christi 1997, writ denied)(concluding evidence of husband's adultery could support trial court's finding of cruel

treatment). The accumulation of several different acts of cruelty may constitute sufficient grounds on which to grant a divorce. *Hester v. Hester*, 413 S.W.2d 448, 450 (Tex.Civ.App.--Tyler 1967, no writ); *Emerson v. Emerson*, 409 S.W.2d 897, 900 (Tex.Civ.App.--Corpus Christi 1966, no writ); *Wauer v. Wauer*, 299 S.W.2d 719, 721 (Tex.Civ.App.--Amarillo 1957, no writ).

At trial, Appellee testified that she caught Appellant viewing pornographic materials on television and on the Internet, and masturbating to them numerous times since 2003. Appellee testified that when she confronted Appellant about his actions, he explained that they were caused by her unwillingness to engage in sexual intercourse with him as frequently as he had wanted. After attempting to engage in counseling with family therapists in Tucson and El Paso, for a time Appellee believed that Appellant had stopped his habit of viewing pornography.[1] Despite their reconciliation efforts, however, Appellant continued to view pornography, and admitted to Appellee that he had a problem with being addicted to viewing pornography. After his admission, Appellant denied viewing any more pornography, but Appellee later discovered a new laptop in his possession on which Appellant created a new e-mail address, and used an alias to communicate with another female. In one of his e-mails to this individual, he indicated that he and Appellee were no longer in a relationship anymore, and that he was "available." We find that this evidence, coupled with the evidence regarding Appellant's involvement with Liza, were legally sufficient to support the trial court's finding of cruelty. *See Winkle*, 951 S.W.2d at 91 (concluding evidence of husband's adultery could support trial court's finding of cruel treatment). As such, the trial court did not err in its finding of cruelty as a basis of fault, and we

---

[1] Appellee also submitted exhibits indicating cookies of pornographic websites from the household desktop computer, which indicated that these materials were accessed before and after their separation.

conclude the court did not err in awarding a disproportionate share of the marital estate to Appellee on both cruelty and adultery as bases of fault. Accordingly, we overrule Issues One and Two.

In Issue Three, Appellant argues that even if Appellee properly proved that she was entitled to the divorce on fault grounds, the trial court erred in its division of the community estate because it was not a "just and right division." We review most appealable issues in a family law case, such as property division incident to divorce or partition, conservatorship, visitation, and child support, under an abuse-of-discretion standard. *Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex.App.--El Paso 2005, no pet.). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Garcia*, 170 S.W.3d at 649; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In reviewing a trial court's division of a marital estate, it is our duty to presume that the trial court properly exercised its discretion. *Chafino v. Chafino*, 228 S.W.3d 467, 473 (Tex.App.--El Paso 2007, no pet.); *Burney v. Burney*, 225 S.W.3d 208, 215 (Tex.App.--El Paso 2006, no pet.). Thus, the party challenging the division bears the burden of demonstrating from the evidence in the record that the trial court's division was so unjust and unfair as to be an abuse of discretion. *Chafino*, 228 S.W.3d at 473–74; *Burney*, 225 S.W.3d at 215.

Appellant asserts the trial court abused its discretion in dividing the community estate between him and Appellee disproportionately. He argues that the court ordered him to pay $51,756.66, which represents approximately 95.1 percent of the community debt, whereas Appellee only had to pay $2,569, or approximately 4.9 percent of the debt. As for award of community property, Appellant contends that while the court awarded Appellee an amount over

$80,000, it awarded him only $11,000.

The Texas Family Code requires that a trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX.FAM.CODE ANN. § 7.001. Although the division must be equitable, a trial court need not divide community property equally. *Chafino*, 228 S.W.3d at 474; *Chacon v. Chacon*, 222 S.W.3d 909, 915 (Tex.App.--El Paso 2007, no pet.).

We employ a two-pronged test in determining whether the trial court abused its discretion and inquire: (1) did the trial court have sufficient information upon which to exercise discretion; and (2) did the trial court abuse its discretion by making a property division that was manifestly unjust or unfair? *Chafino*, 228 S.W.3d at 472; *Burney*, 225 S.W.3d at 215; *Chacon*, 222 S.W.3d at 915. In making the division, the trial court was authorized to consider a variety of factors, which our jurisprudence commonly refers to as the "*Murff*" factors. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Garcia*, 170 S.W.3d at 653. Among the variety of "*Murff*" factors that the trial court may consider in dividing the marital estate are: (1) the spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and (9) disparity of earning capacity. *Murff*, 615 S.W.2d at 699. "We defer to the trial court's determination of the credibility of the witnesses' testimony and disturb the trial court's findings only in a case of clear abuse of discretion." *Burney*, 225 S.W.3d at 215; *see Murff*, 615 S.W.2d at 700 (absent an abuse of discretion, the trial court's property division will not be disturbed on appeal).

The Texas Family Code establishes a presumption that property possessed by either spouse during or at the dissolution of marriage is community property. TEX.FAM.CODE ANN. § 3.003(a)(West 2006); *Sprick v. Sprick*, 25 S.W.3d 7, 17 (Tex.App.--El Paso 1999, pet. denied). The community property presumption applies not only to assets but to liabilities, as well. *Sprick*, 25 S.W.3d at 17. Therefore, there is a presumption that debt acquired by either spouse during marriage was procured on the basis of community credit. *Sprick*, 25 S.W.3d at 17, *citing Wierzchula v. Wierzchula*, 623 S.W.2d 730, 732 (Tex.Civ.App.--Houston [1st Dist.] 1981, no writ). An asset purchased on borrowed funds is presumptively community in character, and borrowed funds that are utilized for living expenses should be treated the same. *Sprick*, 25 S.W.3d at 17. The spouse attempting to rebut these presumptions bears the burden of proof and the degree of proof required is clear and convincing evidence. TEX.FAM.CODE ANN. § 3.003(b); *Sprick*, 25 S.W.3d at 17.

Property owned or claimed by a spouse before marriage or acquired after marriage by gift, devise, or descent is that spouse's separate property. TEX.CONST. art. XVI, § 15; TEX.FAM.CODE ANN. § 3.001(1)(2). As to separate property, the trial court is without authority to divest a spouse of it. *Burney*, 225 S.W.3d at 215; *see Cameron v. Cameron*, 641 S.W.2d 210, 215-16 (Tex. 1982); *Langston v. Langston*, 82 S.W.3d 686, 688 (Tex.App.--Eastland 2002, no pet.)(trial court may not divest a spouse of separate property and award it to the other spouse).

In this case, the trial court entered the following pertinent findings of fact and conclusions of law regarding the distribution of the marital estates:

**Findings of Fact**

.         .         .

6.    Brisa Newberry had separate property at the time the divorce petition was filed and at the time of the final hearing as follows:

a.    a 2000 Mitsubishi Eclipse motor vehicle . . .;

b.    a limited partnership interest in Villalobos L.P.;

c.    a limited partnership interest in a partnership known as Blue Range Physician Management Services, L.P.;

d.    her engagement ring, a gas grill, study furniture, an arm chair, a treadmill, a freezer, and a toy poodle named "Lenny."

7.    Ruel Newberry had separate property at the time of the filing of the divorce and at the time of the final hearing as follows:

a.    a 2001 Ford Explorer motor vehicle . . .

8.    During the marriage, Petitioner and Respondent acquired the following property all of which is community property with the fair market values as shown below:

**Real Estate:**

4364 Cholla Desert Trail, Tucson Arizona
Fair Market Value:  $208,000.00 +
Outstanding Mortgage:  $137,670.00 (as of March 5, 2009)
Outstanding Home Equity Loan:  $74,116.00 (as of March 5, 2009)
**At the time of the last final hearing of September 11, 2009, this house had been foreclosed by the lender as a result of default on the mortgage and home equity loan.**

728 Oscar Perez, El Paso, Texas
Fair Market Value:  $264,380.00
Outstanding Mortgage (Met Life):  $209,429.00 (as of March 5, 2009)
Outstanding Home Equity Loan (1st Tennessee Bank):  $40,627.00
**At the time of the last final hearing of September 11, 2009, this house had been posted for foreclosure**

**Motor Vehicles:**

2003 Mitsubishi Galant
Fair Market Value:  $6,175.00

-10-

**Cash & Accounts with Financial Institutions:**

| | | |
|---|---|---|
| Wells Fargo Checking Account ending 8994 | | $318.00 |
| Wells Fargo Savings Account ending 8780 | | $10.00 |
| Wells Fargo PMA Checking Account ending 7279 | Balance as of 8/31/08 | $14,201.14 |
| Wells Fargo Advantage Checking Account ending 2981 | Balance as of 8/31/08 | $0.00 |
| Wells Fargo Comp Advantage Account ending 0473 | Balance as of 8/31/08 | $0.00 |
| Wells Fargo Comp Advantage Account ending 0170 | Balance as of 8/31/08 | $2,439.20 |
| Wells Fargo Money Market Account ending 5932 | Balance as of 8/31/08 | $0.00 |
| Wells Fargo Money Market Account ending 2999 | Balance as of 8/31/08 | $0.00 |
| Wells Fargo Money Market Account ending 7346 | Balance as of 8/31/08 | $75.08 |
| Wells Fargo Money Market Account ending 2601 | Balance as of 8/31/08 | $0.00 |
| Wells Fargo Savings Account ending 9867 | Balance as of 1/31/08 | $2,437.34 |

(Mr. Newberry closed account and took balance)

Retirement Benefits:

| | | |
|---|---|---|
| Raytheon Savings & Investment Plan | Balance on 3/6/07 | $32,362.17 |

(Mr. Newberry rolled into a Fidelity IRA)

| | |
|---|---|
| Fidelity IRA balance on 12/31/07 | $33,947.17 |

(Mr. Newberry took balance)

**Household Furnishings & Fixtures:**

Please refer to the Exhibit 'A' . . . for the list of property which was still located at the Oscar Perez residence at the time of the separation of the parties and subject to the control of Mr. Newberry.

Additionally, Mr. Newberry was in possession of the following:
Television, Projector, Mrs. Newberry's IBM Laptop, Digital Camera ($4,000.00)
Tandem Bike ($300.00)
3 cats

Mrs. Newberry was in possession of the following:
Desktop computer, external drive, 3 in 1 printer, Television ($2,000+)

9.      During the marriage, Petitioner and Respondent incurred the following debts and liabilities, with the balances on each being as of the date shown below:

**Liabilities:**

| | | |
|---|---|---|
| Wells Fargo Education          . . . | Balance on 8/21/08 | $7,794.29 |
| Panhandle-Plains Student Loan   . . . | Balance on 5/29/08 | $17,155.20 |

Bank of America (Line of Credit) . . . Balance on 3/5/09 $21,069.00
**(This debt was incurred by Respondent, Ruel Newberry, unbeknownst to Petitioner, Brisa Newberry)**

| | | | |
|---|---|---|---|
| Citifinancial . . . [Ashley Furniture] | Balance on 3/5/09 | $3,641.00 |
| AT&T Universal Card . . . [Mitsubishi Galant] | Balance on 8/31/08 | $3,199.11 |
| Kohl's Credit Card . . . | Balance on 3/5/09 | $390.00 |
| Sam's Club Credit Card . . . | Balance on 3/5/09 | $352.00 |
| HSBC Mastercard . . . | Balance on 3/5/09 | $0.00 |
| The Roomstore Credit . . . | Balance on 3/5/09 | $637.00 |
| Sears Credit Card . . . | Balance on 3/5/09 | $2,247.00 |
| New York & Company . . . | Balance on 3/5/09 | $794.00 |
| Express Credit Card . . . | Balance on 3/5/09 | $396.00 |
| Old Navy Credit Card . . . | Balance on 3/5/09 | $0.00 |
| Macy's . . . | Balance on 3/5/09 | $0.00 |

10. Petitioner, Brisa Newberry, had incurred $30,970.27 dollars in attorney's fees for her representation by Larry H. Schwartz, which fees are reasonable and necessary for the representation of Brisa Newberry. Marlene Gonzalez represented Ruel Newberry and both attorneys, by stipulation, presented their attorney's fees to the Court by agreement.

11. Petitioner and Respondent both earn approximately the same amount of money.

.  .  .

## Conclusions of Law

.  .  .

4. All property belongs to the community estate, except for the following, which belongs to the respective parties' separate estate:

Separate Property of Brisa Newberry:

a. a 2000 Mitsubishi Eclipse . . .;

b. a limited partnership interest in Villalobos L.P.;

c. a limited partnership interest in a partnership known as Blue Range Physician Management Services, L.P.;

d.      her engagement ring, a gas grill, study furniture, an arm chair, a treadmill, a freezer, and a toy poodle named "Lenny."

Separate Property of Ruel Newberry:

a.      a 2001 Ford Explorer . . .

5.      A division of the property of Petitioner and Respondent effected by the final judgment is a just and right division, having due regard for the rights of each party irrespective of the characterization of any item of property as either community or separate.

6.      The following is a just and right division of the community assets of the parties:

To Brisa Newberry:

4364 E. Cholla Desert Trail, Tucson, Arizona 85706
**At the time of the last final hearing of September 11, 2009, this house had been foreclosed by the lender as a result of default on the mortgage and home equity loan.**
728 Oscar Perez, El Paso, Texas 79932
**At the time of the last final hearing of September 11, 2009, this house had been posted for foreclosure.**

Household goods in her possession

[A series of household items follow]

fifty percent (50%) of the funds on deposit at:

a.      Wells Fargo Bank PMA checking account number ending 7279, Said account bearing a balance of $14,201.14 as of August 31, 2008

b.      Wells Fargo Bank Comp Advantage checking account ending 0473, Said account bearing a balance of $0.00 as of August 31, 2008

All funds on deposit at:

a.      Wells Fargo Comp Advantage checking account number ending 8994

b.      Wells Fargo Bank Money Market Savings account number ending 8780

c.      Wells Fargo Bank Money Market Savings account number ending 7346

fifty percent (50%) of RUEL NEWBERRY's retirement benefits in Raytheon Savings and Investment Plan (said account bearing a balance of $32,362.17 as of March 6, 2007), wife's portion being $16,181.08

Villalobos L.P.

Blue Range Physician Management Services, L.P.

The following pets: [3 cats and toy poodle]

<u>To Ruel Newberry:</u>

Household goods in her [sic] possession

[A series of household items follow]

fifty percent (50%) of the funds on deposit at:

a.      Wells Fargo Bank PMA Checking account number ending 7279, Said account bearing a balance of $14,201.14 as of August 31, 2008

b.      Wells Fargo Bank Comp Advantage checking account number ending 0473, Said account bearing a balance of $0.00 as of August 31, 2008

All funds on deposit at:

a.      Wells Fargo Savings Account number ending 9867
50% of RUEL NEWBERRY's benefits received from the Raytheon Savings and Investment Plan

2003 Mitsubishi Galant . . .

7.      The following is a just and right division of the debts, liabilities and obligations of the parties:

<u>To Brisa Newberry:</u>

[her student loan; Roomstore account; $1,000 of Citifinancial (Ashley Furniture Debt) . . . Said account bearing a balance of $3,641 as of March 5, 2009; Kohl's account; Sam's Club account; Sears account; New York & Company account; Express account; Old Navy account; Macy's account; the balance due on the

parties' 2006 IRS Federal Income Tax Return]

To Ruel Newberry:

[Wells Fargo Education Financial Services (Student Loan); Panhandle Plains Student Loan; Bank of America (line of credit); $2,641 of the Citifinancial (Ashley Furniture Debt) account; AT&T Universal Card account]

8.      Each party shall pay their own respective attorney's fees, costs and expenses of this suit . . . .

Appellant contends that there was no just division of the community estate assets and liabilities in the present case. He specifically contests that the property award was disproportionate because at the time of his last inventory, only $8,000 remained in the Wells Fargo PMA checking account ending in number 7279, half of which was awarded to Appellee; all of the funds in Wells Fargo checking account ending in number 8994, which had a balance of $794.53 as of February 13, 2009, was awarded to Appellee; all of the funds in Wells Fargo savings account number 8780, which had a balance of $10 on August 31, 2008, was awarded to Appellee; and finally, all of the funds in Wells Fargo money market savings account ending in number 7346, which the Decree listed as having a balance of $75.08, was awarded to Appellee. He asserts that the foregoing awards amount to a total of $4,879.61 in bank funds, and when added to $16,973.58, which constituted half of his Raytheon 401(k) fund, and the residence in El Paso which had a net equity of $14,324, which were all awarded to Appellee as well, the total property award to her summed up to $53,150.77. He claims that in contrast, the court only awarded him half of the Wells Fargo PMA checking account ending in number 7279 ($4,000) plus all of the funds in Wells Fargo savings account number 9867, which at the time of the final divorce decree held no funds. However, he concedes he was awarded the 2003 Mitsubishi

-15-

Galant, which had a net equity value of $3,500, and so he received a total award of $7,500.

We first note that in its findings of fact and conclusions of law, the trial court noted that contrary to Appellant's claims, the Wells Fargo savings account ending in number 9867 that was awarded to him contained $2,437.34. The court specifically determined that Appellant closed his account and took the entire balance in it during marriage. Moreover, the court also found that the Wells Fargo checking account ending in number 8994, which was awarded to Appellee, contained only $318, not the $794.53 amount asserted by Appellant.

Appellant also argues that the trial court erred in its division of community liabilities. He asserts that while the court ordered him to pay $51,756.66 in community debts, the court only ordered Appellee to pay $2,569. Contrary to Appellant's claim, our review of the record indicates that the court ordered Appellee to pay approximately $14,595 in community debts. Moreover, in its findings of fact and conclusions of law, the court determined that Appellant initiated the Bank of America line of credit, and incurred this $21,069 debt without Appellee's knowledge.

In this case, the trial court's division of the community estate was supported by evidence of substantive and probative character, and so we conclude the trial court did not abuse its discretion upon this basis. *See Garcia*, 170 S.W.3d at 649. Both Appellant and Appellee testified before the trial court. The trial court heard testimony that the Raytheon 401(k) retirement account in Appellant's name, which was valued at $32,362.17, no longer existed because Appellant had withdrawn all of the funds out of this account during marriage. Appellee testified that Appellant also withdrew $2,437.34 from the Wells Fargo savings account ending in account number 9867. The court further heard testimony from Appellee that she did not recall

initiating a line of credit with Bank of America; that because she moved out of the Oscar Perez residence she shared with Appellant, she had to spend more than $20,000 on furnishings and supplies for her new apartment.[2] Appellee also testified that her brother, Luis, and her father, Mr. Villalobos, decided to fire Appellant from their company's employ because of allegations that Appellant stole computers from the company. Mr. Villalobos, Appellee's father, corroborated this testimony at trial. The trial court heard Appellee's accusations regarding Appellant's encounters with other females and arguable addiction to pornography during their marriage. Appellant admitted that he viewed pornographic materials from time to time online, but denied he did anything wrong outside of the marriage. According to Appellant, Appellee made frequent and unnecessary expenditures, and he testified that he was unfamiliar with several credit card debts they owed at the time of trial, including those from Chase, Citibank, and the Roomstore. He claimed that the line of credit from Bank of America was used to pay community debts of both parties. With regards to his Raytheon 401(k) plan, he testified he had $4,232.12 in this plan shortly after marrying Appellee, but on cross-examination, he revealed that he withdrew the $32,362.17 from this account after he separated from Appellee and was fired from his job at Mount West Family Health Center. Appellant also testified that he had received a letter from the IRS indicating he owed $17,805 in tax liabilities, but Appellee admitted that this outstanding debt belonged to her, and that she had entered into a settlement agreement and made arrangements with the IRS to pay this off in installments.[3] According to Appellant, he paid for

---

[2] However, Appellee admitted that she removed certain items, such as a computer and a printer, from the Oscar Perez residence to furnish her new apartment.

[3] The record shows that by August 2009, the outstanding IRS debt amounted to $8,779.89, indicating that a portion of the original balance had been paid off.

Appellee's MBA degree from community funds, but Appellee testified that her father paid for her education. Despite Appellant's testimony that he faced financial difficulties since the separation, opposing counsel elicited his testimony that he had been traveling across the country since then, and that his credit report was possibly unaffected by the outstanding IRS obligation. Appellant also testified that he removed certain personal property from the Oscar Perez residence. Finally, the trial court heard argument by Appellee's counsel that although the Tucson property was foreclosed on the first but not the second lien, and that the Oscar Perez property was not foreclosed, Appellee's father was willing to assist her in saving both properties. Deferring to the trial court's determination on witness credibility, and based upon our review of the record, we do not find the trial court abused its discretion that will allow us to disturb its findings. *Burney*, 225 S.W.3d at 215; *see Murff*, 615 S.W.2d at 700 (absent an abuse of discretion, the trial court's property division will not be disturbed on appeal). Accordingly, we overrule Issue Three.

Having overruled Appellant's issues presented for review, we affirm the trial court's judgment.

September 14, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

-18-