COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| NOWAK CONSTRUCTION CO., INC., | § | No. 08-10-00261-CV |
| Appellant, | § | Appeal from the |
| v. | § | 327th Judicial District Court |
| OSCAR AVALOS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2008-1103) |
| | § | |

**O P I N I O N**

Oscar Avalos was seriously injured while working on a project to rehabilitate a section of El Paso's sewer system. He sued the project's general contractor, Nowak Construction Co., Inc. ("Nowak") alleging that Nowak's negligence caused his injuries. A jury agreed, and the trial court entered a judgment on the jury's verdict, awarding Avalos $4,523,120.88. Nowak appeals. We affirm.

**Factual Summary**

Nowak entered into a contract with the El Paso Water Utilities-Public Service Board (the "City") to provide all labor and materials for the sewer project. Nowak's vice-president, John Nowak, served as the project manager. Throughout the course of the project, Mr. Nowak remained at Nowak's headquarters in Kansas. The contract required Nowak to designate a superintendent who would be responsible for preventing accidents. Nowak designated James Heiman, who was neither an engineer nor a safety expert. The company's safety officer stayed in Kansas.

The contract also required Nowak to provide a trench safety system that was designed by a professional engineer.   The contract allowed for the use of shoring, sheeting, and bracing, or alternatively, trench boxes.   A trench box is a safety structure that uses two shields and bracing. Nowak was required to submit the precise specifications for the trench safety system that it intended to use.   No trenching could be performed until the trench safety system was approved by the City, and Nowak could not make any changes to the system thereafter without receiving the City's approval for the modification.

To obtain a trench safety plan, Nowak contracted with a company called "CQC," which was owned by Jaime Rojas, a civil engineer.   Because it intended to use trench boxes for safety, Nowak provided Rojas with the specifications for the trench boxes that it planned to use.[1]   CQC's resulting trench safety system required the use of trench boxes meeting the specifications provided by Nowak, or alternatively for sloping both sides of the trenches.

Nowak contacted one of its former employees, Bobby Quinn, to see if he would be interested in working on the project.   Nowak ultimately entered into a subcontract with Quinn's newly formed company, Rocking Q Construction, to do excavation on the project.   The subcontract indicated that Rocking Q would use trench boxes for trench safety.   It required Rocking Q "to maintain, at all times, proper safeguards and procedures to insure a safe environment for workers."

Instead of using trench boxes, Quinn used "sheet piling."   Sheet piling is a form of bracing in which steel plates are driven into the ground.   If Nowak intended to use sheet piling for trench

---

[1] Both Mr. Nowak and Rojas testified that Nowak intended to use trench boxes.   Heiman testified that Nowak intended to use a combination of trench boxes and sheet piling on the project.   It is undisputed that Nowak did not provide Rojas with any specifications for sheet piling.

safety, the prime contract required Nowak to submit a design from a professional engineer. Although Nowak gave Rojas the specifications for the trench boxes it intended to use, it did not give him any specifications for a sheet piling system. Consequently, Rojas testified that the trench safety system that he designed did not authorize sheet piling for this project.[2]

Sheet piling is normally done with metal plates that are specially designed for that purpose. At this site, however, Quinn used street plates. Street plates are metal plates that are typically used to cover a trench or other opening on a street, so that cars may continue to drive on the street. They are not specially designed to be used in trenches; rather, they are designed to be used above ground.

Rocking Q's trench safety system worked in the following manner: Quinn would hammer street plates into the ground using the bucket of his backhoe, then, still using the backhoe bucket, he would dig a ditch beside the plates and create a 45-degree slope on the side of the ditch opposite to the plates. Once Quinn completed these steps, his employees would get into the trench and use hand shovels to grade the bottom of the ditch so the pipe could be laid. One of Quinn's employees who performed this work was Oscar Avalos.

Quinn did not use any cross-bracing to support the street plates. He testified that the fact that he was not using cross-bracing would have been open and obvious to Heiman, Nowak's superintendent for accident prevention. No one from Nowak told him that this was unsafe or asked him to use cross-bracing. Further, an engineer representing the City visited the work site daily and never criticized the trench safety system.

---

[2] In his testimony, Mr. Nowak sometimes disputed that the prime contract and the CQC trench safety plan only allowed trench boxes or sloping, but at other times, he conceded that there was nothing in either the contract or the plan that allowed the use of sheet piling in general or the particular sheet-piling system that was ultimately used.

Heiman acknowledged that Quinn did not use any cross-bracing, but he testified that the street plates were tied back with a chain. Heiman had never before worked on a job in which street plates were used for trench safety. He had some initial concerns about Quinn's system because no structural supports were used for the street plates. According to Heiman, Quinn told him "that's the way they do it in Texas."[3] Heiman called Mr. Nowak to report his concerns, but he also told Mr. Nowak that Quinn's system seemed to be working. Mr. Nowak spoke with Quinn, who assured him that the plates were being hammered into the ground properly and that a chain was being used to anchor the plates. Mr. Nowak then approved the use of street plates for trench safety.

Nowak did not have an engineer inspect or approve the sheet piling system being used by Quinn and did not do any testing to determine the load-bearing capacity of the street plates. Although the prime contract required Nowak to obtain the City's approval for any modification to the trench safety system, Nowak never obtained the City's approval to change from the City-approved trench box system to a sheet piling system. Avalos' attorney asked Mr Nowak, "[W]hat you approved out there for using street plates was not approved and was outside of the required documents, right?" Nowak answered, "Yes."

El Paso received an unusually large amount of rain while the project was underway. On the evening of September 13, 2006, 1.15 inches of rain fell within a two-hour period. At about 7:30 the next morning, Heiman went to the area where the Rocking Q crew was working. He then went to work about 150-feet away, within sight of the Rocking Q crew. He testified that he returned to the area at around 12:30 or 1 p.m. and saw that the street plates were not anchored in

---

[3] Quinn denied making this statement.

any way--they had neither chains nor cross-bracing. Heiman did not mention to anyone that he thought the site was unsafe. About two hours later, the dirt behind a street plate collapsed, causing the street plate to fall on Avalos while he was working in a trench.

OSHA conducted an investigation of the accident and issued a citation to Rocking Q Construction, but not to Nowak. Nevertheless, a registered professional engineer testified that Nowak's negligence contributed to the accident because it failed to ensure that a proper trench safety system was used. In particular, he testified that Heiman did not perform competently. According to the engineer, the sheet piling system was unsafe because the soil was extremely moist to the point that it would not "hold pressure" and the sheet piling was not anchored. He described the situation as "an accident waiting to happen." The engineer was asked, "If Nowak had enforced the contract and required a trench box, would this incident even have occurred?" He responded, "If it had been using trench boxes rather than the sheeting, then it absolutely would not have occurred as it did." He further testified: "I've never seen a serious accident occur . . . where the standards were being followed on trenching excavation. I've seen dirt failures, but I've never seen an accident occur where there's anywhere close to the -- complying with the safety health standards for installation."

After the accident occurred, trench boxes were always used on the project.

## Jury Charge--Theory of Liability

"A general contractor in control of the premises may be liable for two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997).

5

In this case, the jury charge included three questions regarding liability. The first question asked whether Nowak exercised or retained control over the manner in which trench safety was performed. The jury found that Nowak did exercise or retain control. The second question asked whether the negligence of either Nowak or Bobby Quinn and Rocking Q Construction proximately caused Avalos' injuries.[4] The jury found that only Nowak's negligence caused the injuries. The third question asked the jury to assign percentages of responsibility. The jury found that Nowak was one-hundred percent responsible for Avalos' injuries.

Nowak sought a judgment notwithstanding the verdict, contending that the negligence claim was submitted to the jury on an incorrect theory of liability. Nowak argued that Avalos' claim is properly categorized as one for a premises defect, yet Avalos failed to obtain jury findings on the elements of a premises defect claim. Avalos filed a written response to the motion for judgment notwithstanding the verdict. In addition to arguing that the correct theory was submitted to the jury, Avalos argued that Nowak waived any error because it neither requested a premises defect question nor objected to the way the issue was submitted. Avalos also claimed that Nowak requested the very charge that was submitted. To support this claim, Avalos attached copies of what purport to be Nowak's original and amended proposed jury questions regarding negligence. These questions are worded exactly the same as the question the court submitted to the jury.[5]

In its first issue on appeal, Nowak argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because "Avalos makes a claim under a premises liability

---

[4] Nowak had designated Quinn as a responsible third party.
[5] Nowak also specially excepted to the paragraph in Avalos' petition that alleged a premises defect claim.

theory of negligence, but he obtained a jury verdict based on a negligent activity theory of liability, which will not support the judgment . . . ." Nowak concludes that because Avalos made a premises defect claim, but failed to secure proper jury findings under that theory, this Court should render a judgment that he take nothing.

Avalos counters that this issue must be overruled pursuant to the invited error doctrine because Nowak requested a general negligence question, not a premises liability question. In its reply brief, Nowak acknowledges that it requested the general negligence question. It argues, however, that the invited error doctrine does not apply because it is not complaining about submission of the general negligence question, but is complaining that "the jury finding of general negligence does not support a judgment for a premises liability claim." Nowak further argues that the invited error doctrine does not apply because Avalos had the burden of obtaining the proper jury finding.

"Parties may not invite error by requesting an issue and then objecting to its submission." *Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex. 1993). In *De La Lastra*, the defendant argued at trial that the case was governed by federal maritime law. *Id.* at 917. The court submitted jury questions regarding damages that were available only under state law. *Id.* The defendant did not object to these questions, but actually requested that they be submitted. *Id.* at 920. The Supreme Court thus held that the defendant waived the applicability of maritime law. *De La Lastra*, 852 S.W.2d at 920.

This case is similar to *De La Lastra*. Although Nowak has argued in its post-judgment motion and on appeal that this is a premises defect case, it did not object--but rather agreed to--the submission of the case under a negligent activity theory. Nowak suggests that whether this is a

7

premises defect or a negligent activity case is a question of law, which can be determined by a court after submission to the jury. However, when it is necessary to resolve a legal issue before the jury can properly perform its fact-finding role, a party must lodge an objection in time for the trial court to make an appropriate ruling without having to order a new trial. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). That did not occur here.

We hold that Nowak waived the applicability of a premises defect theory by failing to timely raise it in the trial court and by requesting that the case be submitted under a negligent activity theory. Accordingly, Nowak's first issue is overruled.

### Sufficiency of the Evidence--Control

In its fourth issue, Nowak argues that the evidence is legally and factually insufficient to support the jury's finding that it exercised or retained control over the manner in which trench safety was performed.[6]

Evidence is legally insufficient if it amounts to no more than a scintilla. *Newberry v. Newberry*, 351 S.W.3d 552, 555 (Tex.App.--El Paso 2011, no pet.). More than a scintilla of evidence exists if the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*. Evidence is factually insufficient if it is so against the great weight of the evidence as to be clearly wrong and unjust. *Newberry*, 351 S.W.3d at 555-56.

A general contractor ordinarily owes no duty to a subcontractor's employees. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602,

---

[6] Although Nowak challenges the jury's finding of control, it also asserts that the finding is immaterial or mere surplusage because the jury did not find that Rocking Q was negligent. As demonstrated above, however, this finding is relevant to determine whether Nowak owed a duty to Avalos.

8

605-06 (Tex. 2002); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001); *Hernandez v. Hammond Homes, Ltd.*, 345 S.W.3d 150, 153 (Tex.App.--Dallas 2011, pet. denied). However, a duty arises if the general contractor retains or exercises control over the subcontractor's work. *Harrison*, 70 S.W.3d at 783. A subcontractor's employee can establish that control was retained by proof of an express contractual right or by proof of the actual exercise of control. *Id.* The general contractor's duty of care is commensurate with the control it retains. *Id.*

Nowak argues that there is no evidence, or insufficient evidence, that it exercised any control over the means, methods, or details of Quinn's sheet piling system. The evidence establishes that Quinn himself did all of the sheet piling work. But we are not focused on whether Nowak exercised control over such details as hammering the street plates into the ground. The proper focus is on whether Nowak had control over the decision as to which trench safety system should be used--trench boxes or sheet piling.

In *Harrison*, a subcontractor's employee fell to his death at a construction site because he was not provided with appropriate fall-protection equipment. 70 S.W.3d at 782. His survivors sued the general contractor, LLC. *Id.* In determining whether LLC exercised the requisite control to be held liable for the employee's death, the Texas Supreme Court did not dwell on how the subcontractor's fall-protection system was being implemented. Instead, it focused on whether LLC exercised control over choosing the fall-protection system. LLC's owner and president testified that he instructed one of LLC's employees to make regular inspections of the construction site to ensure that the subcontractor and its employees used proper fall-protection equipment. *Harrison*, 70 S.W.3d at 784. The LLC employee personally observed and approved of the

9

lanyard system being used by the subcontractor's employees, even though LLC's own employees used an independent lifeline system. *Id.* There was evidence that the fall would not have been fatal if an independent lifeline had been used. *Id.* at 784. The Texas Supreme Court held that this evidence was sufficient to establish that LLC exercised control over safety at the construction site. *Id.*; *see also Bright*, 89 S.W.3d at 609 ("This Court has recognized that a general contractor has actually exercised control of a premises when the general contractor knew of a dangerous condition before an injury occurred and approved acts that were dangerous and unsafe.").

The facts here are similar to those in *Harrison*. Nowak assigned Heiman to act as its superintendent for accident prevention. Heiman saw that Quinn was not providing trench boxes for his employees and was sufficiently concerned about it that he called Mr. Nowak. After talking with Quinn, Mr. Nowak approved the use of street plates, rather than trench boxes. Mr. Nowak expressly acknowledged that he allowed street plates to be used. He also answered "Yes" to the following question: "Your contract gave you the power to require trench boxes by Quinn, but you chose not to, correct?"

Even if we focus on the way Quinn implemented the sheet piling system, there is evidence regarding Nowak's control. Quinn testified that Heiman saw and approved of how he used the street plates. Although there was some testimony from Heiman and Nowak that Quinn was supposed to tie the street plates back with a chain, Heiman acknowledged that he observed the trench a couple of hours before the accident and saw that no chains or other anchoring were in use. Avalos testified that chains were used only for pipe-laying, not to secure the plates.

We conclude that the evidence is both legally and factually sufficient to establish that Nowak exercised actual control over the trench safety system. Accordingly, Nowak's fourth

10

issue is overruled.

## Sufficiency of the Evidence--Negligence

In its second issue, Nowak asserts that "[t]here is no evidence, or factually insufficient evidence, under a negligent activity theory, that Mr. Avalos' injuries were the result of any affirmative and contemporaneous negligent act. Therefore, the evidence will not support the jury's finding . . . that Nowak Construction Co., Inc.'s negligence was a proximate cause of Mr. Avalos' injuries." In its opening brief, Nowak's argument under this issue focuses solely on the lack of "any affirmative and contemporaneous negligent act." Nowak points out that its employees were not near the street plate when it fell and that Rocking Q took all of the actions related to trench safety. Furthermore, no Rocking Q employee committed any contemporaneous negligent act because the accident did not occur as Quinn was hammering the street plate into the ground; the plate had already been hammered into the ground when it fell.

Nowak relies principally on *Del Lago Partners, Inc. v. Smith*, where the Supreme Court "recognized that negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." 307 S.W.3d 762, 776 (Tex. 2010)[Footnotes omitted]. However, the jury was not instructed that some affirmative, contemporaneous conduct was a requirement for holding Nowak liable. The jury was simply instructed that "negligence" means "failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances . . . ." It was then asked whether Nowak's negligence proximately caused Avalos' injuries. The jury charge omitted any reference to an affirmative,

11

contemporaneous act, and Nowak did not lodge any objection to this omission.

If no one objects to an issue submitted to the jury, an appellate court must review the sufficiency of the evidence against the question and instruction that were actually submitted, not ones that should have been submitted. *Osterberg*, 12 S.W.3d at 55. "[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Id.* Because the affirmative, contemporaneous act requirement was not included in a jury instruction or question, Nowak's argument that the evidence is legally and factually insufficient to establish this requirement is not well taken.[7]

In its reply brief, Nowak attempts to raise additional sufficiency of the evidence complaints within its second issue. It argues that there is no evidence that it owed Avalos a duty to implement the approved trench safety plan and that there is no evidence that its failure to implement the plan was a cause-in-fact of Avalos' injuries. These arguments are waived because they were not included in Nowak's opening brief. *See Fox v. City of El Paso*, 292 S.W.3d 247, 249 (Tex.App.--El Paso 2009, pet. denied). In any event, Avalos established the existence of a duty through evidence that Nowak exercised control over trench safety. As for causation, Avalos' expert, a registered professional engineer, testified that the accident would not have occurred if trench boxes had been used. *See Harrison*, 70 S.W.3d at 784-85.

Nowak's second issue is overruled.

### Jury Charge--Damages

In its third issue, Nowak argues that the trial court erred by overruling its objection to the submission of separate damage questions on physical pain and mental anguish. The trial court

---

[7] We express no opinion as to whether the jury charge was defective.

has broad discretion in constructing the jury charge as long as it is legally correct. *Five Star Int'l Holdings Inc. v. Thomson, Inc.*, 324 S.W.3d 160, 169 (Tex.App.--El Paso 2010, pet. denied).

The jury was asked to determine a dollar amount to compensate Avalos for twelve separately listed elements of damage. Four of the listed elements were physical pain sustained in the past, physical pain to be sustained in the future, mental anguish sustained in the past, and mental anguish to be sustained in the future. The jury awarded $500,000 for past physical pain, $350,000 for future physical pain, $500,000 for past mental anguish, and $500,000 for future mental anguish. Nowak does not contest the sufficiency of the evidence to support these amounts.

Nowak cites three cases in which physical pain and mental anguish were submitted together as one element of damages. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 248 (Tex.App.--Texarkana 2005, no pet.); *Santa Rosa Med. Ctr. v. Robinson*, 560 S.W.2d 751, 753 (Tex.Civ.App.--San Antonio 1977, no writ). The appellate opinions in those cases merely note that the issues were submitted this way and do not address whether the submission was proper or improper.

Without citing any authority, Nowak contends that physical pain and mental anguish are not separate elements of damages. Courts have held that physical pain and mental anguish are in fact separate and distinct elements of damage for personal injuries. *See SunBridge*, 160 S.W.3d at 248; *Leyendecker v. Harlow*, 189 S.W.2d 706, 711 (Tex.Civ.App.--Galveston 1945, writ ref'd w.o.m.); *see also Sw. Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 954 (Tex.App.--San Antonio 1997, no writ)(Green, J., concurring).

13

Nowak also points out that the Texas Pattern Jury Charges place physical pain and mental anguish together as one element of damages. The pattern charges serve as a guide only and are not binding on trial courts. *See Styers v. Schindler Elevator Corp.*, 115 S.W.3d 321, 325-26 (Tex.App.--Texarkana 2003, pet. denied). Given that physical pain and mental anguish are separate elements of damage, the court did not abuse its considerable discretion in submitting them that way, rather than following the pattern charge.

We also note that the jury was instructed to "[c]onsider each element separately" and not to "award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any." The Texas Supreme Court has approved this type of instruction. *See Golden Eagle*, 116 S.W.3d at 770-71. Unless the record indicates otherwise, we presume the jury followed the instruction. *See id.* at 771.

Nowak's third issue is overruled.

## Conclusion

Having overruled all of Nowak's appellate issues, we affirm the judgment of the trial court.

February 15, 2012
CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

14