In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00079-CV**
_____

**SYBRENA DUPREE BRACKIN, Appellant**

**V.**

**MARK MATHIAS BRACKIN III, Appellee**

**On Appeal from the 356th District Court**
**Hardin County, Texas**
**Trial Cause No. 57234**

**MEMORANDUM OPINION**

This is an appeal from a final decree of divorce. In three appellate issues, Sybrena Dupree Brackin ("Sybrena") contends the trial court abused its discretion by (1) altering the terms of the parties' irrevocable mediated settlement agreement when it signed the final decree of divorce and related Qualified Domestic Relations Orders ("QDROs"); (2) awarding flood insurance claim proceeds to Mark Mathias Brackin III ("Matt") because no evidence supported such an award; and (3) asserting that Sybrena voluntarily signed the final decree believing it to be just and right, and

1

that Sybrena did not sign due to coercion, duress, or any other agreement. We affirm the trial court's judgment.

## PERTINENT BACKGROUND

Sybrena and Matt married on August 10, 1986. On June 16, 2016, Sybrena filed a petition for divorce, in which she stated that she believed the parties would enter into an agreement regarding division of their community property, and she asked the trial court "to approve the agreement and divide their estate in a manner consistent with the agreement." Sybrena further requested that if the parties did not make such an agreement, the trial court "divide their estate in a manner that the Court deems just and right[.]" In response, Matt filed a general denial and prayed that Sybrena take nothing. Matt subsequently filed an original counterpetition for divorce, in which he pleaded, *inter alia*, that the court divide the parties' community property in a manner the court deems just and right.

On June 20, 2017, the parties signed an irrevocable mediated settlement agreement ("MSA"), which was filed with the trial court the following day. Exhibit A to the MSA, which the MSA incorporated by reference, included, among other things, an enumerated spreadsheet with a list of the parties' community assets and liabilities, Matt's values for the assets, identifying information for vehicles, and a column indicating to which party each item would be awarded. In the MSA and Exhibit A, the parties' real properties were valued as follows, using Matt's values:

2

(1) $295,000 for the parties' residence, (2) $40,440 for the Hybrook property, (3) $22,600 for the Brandon property, (4) $100.00 for two lots on Park Place, (5) $62,720 for the Gardner property, (6) $2450 for the Congress property, and (7) $28,790 for the Kenneth property. The MSA further provided that the funds in the Community Health Corporation and Westrock retirement accounts would be the subject of QDROs. On August 27, 2018, Sybrena filed a motion to divide undivided assets, in which she asserted that Hurricane Harvey damaged most of the property the parties had agreed to divide in the MSA and pleaded that "the parties received insurance monies for damages to the structure and contents of the home that are not addressed in the [MSA]." Sybrena further requested that the trial court "enter all clarifying orders necessary to divide the assets not addressed in said [MSA]."

On November 27, 2018, the trial judge conducted a final evidentiary hearing, at which Sybrena testified that she and Matt had reached a MSA regarding the division of their property, and the MSA was admitted into evidence. According to Sybrena, some items were not covered by the MSA because they were acquired after the parties entered the MSA, and she explained that the flooding caused by Hurricane Harvey destroyed the value of some property. After the storm, the parties received insurance to cover certain items, including $7600 for the contents of their residence and $33,000 for flood damage to the structure. Sybrena opined that Matt had sold

3

several of their rental properties at a "highly reduced rate" compared to the values listed on the MSA inventory.

Sybrena testified that if Matt had offered the sale proceeds from the properties at the values listed in the MSA, she would have accepted the offer. According to Sybrena, she should have received half of their income from the rental properties, but Matt kept all the proceeds. With respect to the parties' residence, Sybrena testified that Matt had planned to buy the home from her, but he decided not to do so "after he spent a lot of money." Sybrena explained that Matt spent the money of his own volition, and "there was no agreement that [she] would ever pay him back for any of the expenses." According to Sybrena, the residence "got a lot of water in it" and "[t]here was some work done but not to the extent that [Matt] represents." In addition, Sybrena testified that the money Matt used to make the repairs came from community funds because "we had no insurance settlement at that point[.]" Sybrena testified that her Westrock retirement plan is worth $110,437.30, and she agreed that said value was not listed in the MSA. Sybrena stated she believes Matt intentionally undervalued their real property to reacquire the properties when their divorce is finalized.

Matt testified that Sybrena's retirement benefits and the amount in her 401(k) from Community Health Corporation accrued during the marriage. Matt explained that the property values he listed on the MSA came from the county tax rolls, and he

4

testified that significant back taxes were owed on the properties. Matt testified that he sold the properties for approximately $44,000, but the net price after the back taxes were paid was "in the neighborhood of $25,000.00." Matt explained that he made reasonable efforts to sell the properties for as much as possible, and he selected the best bid.

With respect to the residence, Matt testified that insurance paid approximately $33,000 for the structure and around $12,000 for the personal property. Matt testified that he received a $5000 advance and subsequently received approximately $26,000 more. Matt explained that the house had to be remediated due to mold, so he used the insurance money to gut the house and then "borrowed money to go ahead and get it taken care of." Matt testified that he spent $25,329.90 out of his pocket to repair the residence, which improved the residence's value, and he sought reimbursement from the trial court for that amount. The trial court admitted into evidence documents reflecting the expenditures Matt incurred in repairing the residence. Matt testified that Sybrena did not produce an inventory before the mediation, and the value Matt listed in the MSA for Sybrena's Westrock accounts was based on old paperwork he found. Additionally, Matt explained that he sought reimbursement for approximately $4000 he paid to maintain insurance on the residence.

5

In the final divorce decree, signed on December 17, 2018, the trial court awarded half the net proceeds from the sale of the parties' residence to Sybrena, "less $18,335.00 (pursuant to the [MSA]) and $4,000 (one-half of the $8,000.00 expended by [Matt] for taxes and insurance after the [MSA], for a total of $22,335.00 less than [Sybrena]'s one-half portion. . . ." The trial court also awarded Sybrena one-half of the following assets: (1) her retirement benefits in Community Hospital Corporation, arising from her employment at Baptist Hospital; (2) her retirement, 401(k), or 403(b) benefits in Westrock company arising from her employment; (3) the net proceeds ($12,293.98) from the sale of the Hybrook property; (4) the net proceeds ($9859.59) from the sale of the Brandon property; and (5) the funds from the parties flood insurance and other insurance policies covering the residence, "less $25,329.90 first reimbursed to [Matt] for money expended by him for repairs and reconstruction." The trial court awarded Sybrena the entire $7600 insurance payment for the contents of the residence.

The trial judge signed QDROs pertaining to the Westrock Consolidated Pension Plan, the Community Hospital Corporation 401(k), the Westrock 401(k), the Community Hospital 403(b) plan, and the Westrock Cash Balance Pension Plan. The QDROs that include a specific valuation date provide that the valuation date "shall be" December 17, 2018. Each QDRO assigned Matt a fifty percent interest in Sybrena's balance under the plan. Sybrena filed a request for findings of fact and

conclusions of law, followed by a notice of past-due findings of fact and conclusions of law, but the trial judge made none.

ISSUE ONE

In her first issue, Sybrena argues the trial court abused its discretion by altering the terms of the MSA in the final divorce decree and the related QDROs. Specifically, Sybrena asks this Court to reverse the trial court's $4000 reimbursement award to Matt; reform the "sales price" of the Hybrook, Brandon, and Kenneth properties; reform the division of retirement funds from Westrock and Community Hospital Corporation; delete the $25,329.90 reimbursement to Matt for improvements to the residence; and reform the QDROS to use "a valuation date of April 12, 2017[,] as listed in the MSA" and "agreed by the parties" pertaining to the Westrock consolidated pension plan, the Community Hospital Corporation 401(k), the Westrock 401(k), the Community Hospital Corporation 403(b), and the Westrock Company cash balance plan.

We review the trial court's divorce decree and the related QDROs dividing the parties' community property under an abuse-of-discretion standard. *Newberry v. Newberry*, 351 S.W.3d 552, 558 (Tex. App.—El Paso 2011, no pet.); *Sonnier v. Sonnier*, 331 S.W.3d 211, 216 (Tex. App.—Beaumont 2011, no pet.). The trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Newberry*, 351 S.W.3d at 558. In reviewing a trial court's division of marital

7

property, we must presume that the trial court properly exercised its discretion. *Newberry*, 351 S.W.3d at 558. Therefore, the party challenging the trial court's property division bears the burden of demonstrating that the division was so unjust and unfair as to constitute an abuse of discretion. *Id.*

"Under the Texas Family Code, a party to a suit for dissolution of marriage or a suit affecting the parent-child relationship is entitled to judgment on a mediated settlement agreement . . . if the agreement satisfies the statute's enumerated requirements." *Highsmith v. Highsmith*, 587 S.W.3d 771, 773 (Tex. 2019) (citing Tex. Fam. Code Ann. §§ 6.602(c), 153.0071(d)). Sybrena correctly asserts that a trial court abuses its discretion when it fails to follow a mediated settlement agreement. *See In re Lechuga*, No. 07-15-00088-CV, 2015 WL 2183744, at *3 (Tex. App.—Amarillo May 7, 2015, no pet.) (mem. op.).

The MSA provided that the parties' property was to be divided pursuant to Exhibit A, and upon the sale of the residence, Matt would receive "$18,335.00 off the top," and the net proceeds would be equally divided. Exhibit A contained a list of community assets and liabilities, all of which were based upon values assigned by Matt. The column in Exhibit A labeled "WIFE'S VALUES" does not contain any valuations. Hurricane Harvey had not yet occurred in June 2017, when the parties entered the MSA; therefore, the provisions of the divorce decree regarding proceeds from the parties' flood insurance and the repair expenses Matt incurred (and for

8

which Matt sought reimbursement) do not conflict with the MSA. *See generally* Tex. Fam. Code Ann. §§ 6.602(c), 153.0071(e); *see also generally In re Lechuga*, 2015 WL 2183744, at *3. With respect to the division of proceeds from the sale of the parties' real properties, including the residence, the MSA does not state that Matt's listed values for the properties as of April 2017 would be the only values considered, nor does it state that Sybrena would receive half of the listed amounts, provide for any particular valuation date, or state that the properties would be listed for sale at the values listed in the MSA. Lastly, the MSA specifically provided that the retirement funds would be the subject of QDROs. For all these reasons, we conclude that the trial court did not abuse its discretion. *See Newberry*, 351 S.W.3d at 558; *Sonnier*, 331 S.W.3d at 216; *see also* Tex. Fam. Code Ann. § 6.602. Accordingly, we overrule issue one.

## ISSUE TWO

In issue two, Sybrena contends the trial court abused its discretion by awarding the flood insurance proceeds of $25,329.90 to Matt as reimbursement for repairs because no evidence supports the award. As stated above, we review the trial court's award under an abuse of discretion standard. *See Newberry*, 351 S.W.3d at 558; *Sonnier*, 331 S.W.3d at 216. "To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider (1) whether the trial court had sufficient evidence upon

9

which to exercise its discretion and (2) whether it erred in its application of that discretion. *Smith v. Payandeh*, No. 01-18-00463-CV, 2019 WL 2528197, at *5 (Tex. App.—Houston [1st Dist.] June 20, 2019, no pet.) (mem. op.). The trial court does not abuse its discretion when it bases its decisions on conflicting evidence or when some substantive and probative evidence supports its decision. *Wright v. Berger*, No. 01-18-00964-CV, 2020 WL 1917839, at *4 (Tex. App.—Houston [1st Dist.] Apr. 21, 2020, no pet.).

The flood had not yet occurred when the parties signed the MSA, so the MSA necessarily did not address issues related to the flood. Sybrena asserts that because the trial court did not make written findings of fact and conclusions of law, we must presume that harmful error occurred. We disagree. As previously discussed, Matt testified that he spent $25,329.90 on repairing the parties' residence, and numerous documents reflecting Matt's expenses for the repairs were admitted into evidence. Because the trial court's award of $25,329.90 to Matt was supported by some substantive and probative evidence, we conclude that the trial court did not abuse its discretion. *See Wright*, 2020 WL 1917839, at *4; *Smith*, 2019 WL 2528197, at *5. We overrule issue two.

## ISSUE THREE

In issue three, Sybrena asserts that the trial court abused its discretion by asserting that she voluntarily signed the final decree believing it to be just and right,

and that she did not sign due to coercion, duress, or any other agreement. Specifically, Sybrena maintains that a settlement judgment is void without consent, and she contends that she did not agree to the terms and conditions of the divorce decree. When the parties have reached a mediated settlement agreement, the trial court must render judgment on the agreement, even if a party attempts to withdraw consent. *In re Marriage of Joyner*, 196 S.W.3d 883, 890 (Tex. App.—Texarkana 2006, pet. denied).

> The trial court's final decree of divorce recites as follows, in pertinent part:
>
> Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

The record reflects that the final decree of divorce was not signed by Sybrena, Matt, or their attorneys, but was signed by the trial judge. However, the record does not reflect that Sybrena attempted to withdraw her consent to the MSA or otherwise objected to the MSA before the trial court signed the final decree of divorce. As discussed above, the trial court's final divorce decree did not conflict with the MSA, and the trial court was obligated to render judgment in accordance with the MSA. *See id*. To the extent that Sybrena complains that the above-quoted recitation in the decree harmed her, we note that, by its own terms, the recitation presupposes that both parties signed the judgment. The parties did not sign the agreement; therefore,

11

the complained-of provision in the divorce decree is of no effect, and Sybrena's

argument that it harmed her presents nothing for review. We overrule issue three.

Having overruled each of Sybrena's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on July 30, 2020
Opinion Delivered December 30, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.