# NO. 12-14-00336-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FREDERICK DAWSON GRAHAM,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *DENA MARIE TURNER,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Frederick Dawson Graham appeals the trial court's final decree of divorce. On appeal, he presents nine issues. We affirm.

### BACKGROUND

Frederick Dawson Graham and Dena Marie Turner were married on January 31, 2007. On November 14, 2013, Dena filed a first amended original petition for divorce, alleging that Frederick was guilty of cruel treatment towards her, committed adultery, and committed fraud on the community estate. She also requested that she be awarded a disproportionate share of the parties' estate. Both parties made numerous claims for reimbursement. The trial court ordered that Frederick pay temporary spousal support to Dena in the amount of $2,000.00 a month beginning April 1, 2014.

Following a bench trial, the trial court granted the divorce. The court ordered that Frederick and Dena jointly owned the residence as tenants in common, and owned the property known as the "back lot" as community property. The court ordered both properties sold, the net sales proceeds from the residence distributed fifty percent to each party, and the net sales proceeds from the back lot, after repayment of a specific debt, distributed sixty percent to Dena and forty percent to Frederick. Further, "for the purpose of a just and right division of property,"

the court awarded Dena an $8,000.00 judgment against Frederick "to satisfy temporary orders." The award also included attorney's fees and court costs. The trial court filed findings of fact and conclusions of law, and this appeal followed.

## STANDARD OF REVIEW

In a decree of divorce, a court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (West 2006). We review a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied); *see also Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Garza*, 217 S.W.3d at 549; *Moroch*, 174 S.W.3d at 857. Moreover, we should reverse a court's division of property only if the error materially affects the court's just and right division of the property. *Henry v. Henry*, 48 S.W.3d 468, 475 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, once reversible error affecting the "just and right" division of the community estate is found, an appellate court must remand the entire community estate for a new division. *Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 780 (Tex. App.—San Antonio 2004, pet. denied) (quoting *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985)).

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham*, 349 S.W.3d at 157. We review a trial court's conclusions of law de novo. *Quick v. Plastic Solutions of Tex., Inc.*, 270 S.W.3d 173, 181 (Tex. App.—El Paso 2008, no pet.). Erroneous conclusions of law are not binding on the appellate court, but if the controlling findings of fact will support a correct legal theory, are supported by the evidence, and are sufficient to support the judgment, the adoption of erroneous legal conclusions will not mandate reversal. *Id*.

2

In his first, second, third, and fourth issues, Frederick argues that the trial court abused its discretion by awarding Dena an ownership interest in his separate property (the residence), thereby divesting him of one-half of his interest in the property. He complains that the evidence is insufficient for the court to find that the parties owned the residence as tenants in common, and that the evidence showed the residence was purchased with his separate funds. We will consider these issues together.

## Applicable Law

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006). Any doubt as to the character of property should be resolved in favor of the community estate. ***Sink v. Sink***, 364 S.W.3d 340, 345 (Tex. App.—Dallas 2012, no pet.). The burden of proof necessary to establish that property is separate property is clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b). Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." ***Id***. § 101.007 (West 2014). A spouse's separate property consists of the property acquired by the spouse during marriage by gift, devise, or descent. ***Id***. § 3.001(2) (West 2006); *see also* TEX. CONST. art. XVI, § 15.

Property possessed by either spouse during or at the dissolution of the marriage is presumed to be community property, but the presumption may be rebutted by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003 (West 2014); ***Cockerham v. Cockerham***, 527 S.W.2d 162, 167 (Tex. 1975). In its conclusions of law, the trial court cited two cases in determining that Frederick and Dena jointly owned the residence as tenants in common. The first is ***Harrington v. Harrington***, 742 S.W.2d 722 (Tex. App.—Houston [1st Dist.] 1987, no writ).

In ***Harrington***, the husband contended that the trial court divested him of his separate property house. ***Id***. at 723. He argued that the credit application and title to the property were solely in his name. ***Id***. Thus, he said, the house was his separate property. ***Id***. The trial court found that the parties agreed title to the house would be taken in the husband's name for credit purposes and convenience only. ***Id***. at 724. It also found that the parties intended the residence to be owned, used, and enjoyed jointly. ***Id***. The trial court concluded that the parties entered

into an oral partnership/joint venture to own and occupy the house, and that they owned the house as tenants in common. *Id.*

At trial, the evidence showed that the parties lived together for three years before deciding to purchase a house. *Id.* at 724-25. The parties went house-hunting together and found the house. *Id.* at 725. The wife testified that her husband told her that because she was earning so little money at the time, he would apply for the loan himself and put his name on it. *Id.* She agreed and had no concern that he would ever assert the property was his alone. *Id.* The wife testified that they always referred to the property as "our home," and that the husband never claimed the property was his alone before the separation. *Id.* They both contributed to improving the house. *Id.* The parties were married approximately two years after purchasing the house. *Id.* at 723. The appellate court held that there was some evidence to support the trial court's findings and conclusion that the parties intended to purchase and own the house as partners. *Id.* at 725. Therefore, the court found no abuse of discretion in the trial court's judgment. *Id.*

The second case is *Aaron v. Aaron*, No. 14-10-00765-CV, 2012 WL 273766 (Tex. App.—Houston [14th Dist.] Jan. 31, 2012, no pet.) (mem. op.). In that case, the husband contended that the trial court erred in finding a house had been jointly acquired by the parties prior to marriage. *Id.* at *3. The evidence showed that the parties planned to purchase the house and signed an earnest money contract. *Id.* However, the wife learned that her credit was poor and that they could purchase the house at a lower interest rate if it was purchased in the husband's name only. *Id.* The husband signed another earnest money contract and the closing documents were in his name only. *Id.* The trial court found that even though the parties purchased the house in the husband's name only, they purchased the house jointly and intended to be joint owners of the house and that the wife paid one-half of the down payment and closing costs. *Id.* at *4. The trial court concluded that the parties jointly owned the residence as tenants in common. *Id.* The appellate court, citing *Harrington*, concluded that the evidence showed the parties purchased the house in the husband's name due only to the wife's poor credit and that they had agreed on how to handle the payment of the mortgage and expenses. *Id.* Thus, the appellate court held that there was evidence to support the trial court's finding that the parties owned the house as tenants in common. *Id.*

4

**Analysis**

In this case, the evidence showed that the parties began living together sometime in 2001 and began searching for a house together in 2004. They relocated to Nacogdoches and purchased the residence in August 2006 before they married in January 2007.

*Locating the residence.* The evidence shows that Dena was primarily in charge of locating the potential properties, and handling the lending and closing aspects of buying a house, including a property that they almost purchased in 2004. The trial court found that Dena testified the title to the residence was in Frederick's name because Dena's credit score would have resulted in a higher mortgage interest rate. Dena testified that her name was not on the title to the residence because of a previous difficult contract for a house.

*Intent of the parties.* The trial court found that Frederick represented to Dena that he intended the residence to be jointly owned, used, and enjoyed by them. Numerous emails between the parties refer to the residence as "our" home. Dena testified that the residence was the "marital home." Frederick referred to spending Christmas in "our new house" in an email to Dena, and Dena had the responsibility of remodeling the residence. She testified that Frederick promised to add her name on the deed to the residence.

*Business revenue.* Frederick owned Graham Global Energy Consulting, which developed the functionality of the SAP software program for the oil and gas industry. (According to Frederick, SAP is the third largest software company in the world.). The trial court found that Frederick acknowledged Dena's business services for Global consistently from 2004 through 2011. Dena testified that she wrote his first curriculum vitae; wrote, designed, and edited his presentations; and handled his administrative work, including sending invoices. Numerous emails from Frederick showed that Dena worked as his personal assistant, handled his administrative duties, edited his flow charts for presentations, and corrected his spelling errors. He sent multiple emails to Dena stating that he appreciated all the work she had done for him in her role as his personal assistant and for her efforts in working on his contracts. Dena testified that if she had not performed these services, Frederick would have had to hire a writer.

*Funding of the residence.* The trial court found that the initial down payment for the residence was provided from business revenues generated by the combined efforts of the parties. Further, business revenues were used to fund the regular monthly payments on the mortgage. The evidence showed that Frederick used funds from his business account at Comerica Bank to

make the down payment of $83,934.95. Dena showed deposits made to the Comerica business account from Global's contracts. These payments totaled over $110,000.00 in the two months prior to their closing on the residence. She also showed that Frederick transferred $85,000.00 from the Comerica business account to another account for the down payment. The evidence showed further that the monthly mortgage payments were made from, or transferred from, the business account. However, Dena's evidence also showed that some of the later mortgage payments were made from transfers out of Frederick's money market account.

*Frederick's inheritance and tracing.* Frederick testified that he received over $150,000.00 from his father in 2004. However, he admitted that he could not prove where the money went or into which account he placed that money. He did not believe he deposited it into the business account. Further, Frederick offered no evidence that the funds used to purchase the residence came from his inheritance or his personal money market account. He acknowledged that those funds came from the business account.

*Conclusion.* Similar to the evidence presented in **Harrington** and **Aaron**, the above evidence shows that the parties agreed to buy the residence together, that the title was in Frederick's name due to Dena's credit problems, that the parties intended the residence to be "their" home, and that the funds used to purchase the residence came from business revenues generated by the efforts of both parties. Accordingly, the trial court did not abuse its discretion in determining the parties owned the residence as tenants in common. Frederick's first, second, third, and fourth issues are overruled.

## FAULT IN MARRIAGE

In his seventh issue, Frederick argues that the trial court abused its discretion in finding that he was at fault in the breakup of the marriage. More specifically, he contends that the evidence was not relevant in time, i.e., either before the marriage or after the parties separated. Frederick also argues there was no evidence that he assaulted Dena.

## Applicable Law

A trial court may grant a divorce on the ground of cruel treatment. TEX. FAM. CODE ANN. § 6.002 (West 2006). To be considered "cruel treatment," the conduct of the accused party must rise to such a level as to render the couple's living together insupportable. *Id*.; *Ayala v. Ayala*, 387 S.W.3d 721, 733 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Newberry v.*

*Newberry*, 351 S.W.3d 552, 557 (Tex. App.—El Paso 2011, no pet.). "Insupportable," for purposes of "cruel treatment," means incapable of being borne, unendurable, insufferable, or intolerable. *Ayala*, 387 S.W.3d at 733; *Henry*, 48 S.W.3d at 473–74. Mere trivial matters or disagreements do not justify the granting of divorce for cruel treatment. *Ayala*, 387 S.W.3d at 733. Acts occurring after separation can support a finding of cruel treatment. *Id.*; *Newberry*, 351 S.W.3d at 557.

The definition of assault is the same, whether in a civil or criminal trial. *Rogers v. Peeler*, 146 S.W.3d 765, 769 (Tex. App.—Texarkana 2004, no pet.). A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse, or intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse. TEX. PENAL CODE ANN. § 22.01(a)(1), (2) (West Supp. 2014).

**Analysis**

The trial court found that Frederick was guilty of cruel treatment towards Dena, including acts of assault and/or battery. It found Frederick at fault in the breakup of the marriage. At trial, Dena testified about Frederick's behavior towards her in eight different episodes. All of these episodes occurred between August 2009 and April 2012, during their marriage but before they separated. Dena stated that Frederick frequently flew into violent, explosive rages, lunged at her, screamed in her face for more than an hour at a time, sent furniture "flying," cursed at her while running through the house and yard for hours, and crouched down in a "rugby stance" before screaming at her. She described one episode during which Frederick followed her into the kitchen, slammed her against the wall, and attempted to strangle her. He also took her debit cards, cash, and key to the safety deposit box containing her passport while they were staying at a hotel in Thailand.

Frederick agreed that the parties had a "tumultuous" relationship. He stated that they had "heated words," and believed that alcohol "fueled" the arguments. He denied physically abusing her. But as the sole judge of the credibility of the witnesses, the trial court was free to believe Dena's testimony. *See Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011). Therefore, based on Dena's evidence, the trial court could have determined that Frederick intentionally or knowingly threatened Dena with imminent bodily injury, and that all of these episodes occurred during the marriage. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (2). Based on this finding, the trial court

could have reasonably concluded that Frederick's conduct constituted cruel treatment such that the marriage was made insupportable.

Dena's testimony, which was in most respects unchallenged by Frederick, provided evidence to support the trial court's finding that Frederick was guilty of cruel treatment towards her. Thus, the trial court did not abuse its discretion in determining that Frederick was at fault in the breakup of the marriage. Frederick's seventh issue is overruled.

**DISPROPORTIONATE DIVISION**

In his ninth issue, Frederick contends that the trial court abused its discretion by awarding Dena a disproportionate part of the tract adjoining the residence (the back lot).

**Applicable Law**

A trial court is charged with dividing the marital estate in a "just and right" manner. TEX. FAM. CODE ANN. § 7.001; *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.—San Antonio 2007, no pet.). In dividing the marital estate, the trial court is not required to divide it equally, but may order an unequal division when a reasonable basis exists for doing so. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981); *Gardner*, 229 S.W.3d at 756; *Prague v. Prague*, 190 S.W.3d 31, 41 (Tex. App.—Dallas 2005, pet. denied). Factors to consider in dividing the estate include the parties' capacities and abilities; benefits the party not at fault would have derived from continuation of the marriage; business opportunities; education; the parties' physical conditions; the parties' financial conditions and obligations; the size of the separate estates; the nature of the property; and disparities in earning capacities and incomes. *See Murff*, 615 S.W.2d at 699. The court may also consider fault and the conduct of the errant spouse when fault grounds are pleaded. *Id*. at 698. Grounds for a fault-based divorce include cruelty. *See* TEX. FAM. CODE ANN. § 6.002. The circumstances of each marriage dictate what factors should be considered in division of the marital estate. *Young v. Young*, 609 S.W.2d 758, 761 (Tex. 1980).

**Analysis**

We have already determined that the trial court did not abuse its discretion in finding that Frederick was at fault in the breakup of the marriage. Thus, the trial court concluded that Dena was entitled to a disproportionate division of the parties' marital estate, and awarded her sixty percent and Frederick forty percent of the proceeds from the sale of the back lot. Both parties agreed the back lot was purchased during the marriage. However, Frederick contends that the

8

purchase of the back lot was possible only because he used his separate property funds to buy it. Further, he argues that he secured a loan from his sister and brother-in-law to avoid foreclosure.

The evidence at trial showed that the funds for the down payment on the back lot were taken from a household account co-owned by Frederick and Dena. It appears that the mortgage payments for the back lot were made from this same account. The evidence shows that the funds used to purchase the back lot came from business revenues generated by the efforts of both parties. Frederick produced no evidence showing that the funds used to purchase the back lot were taken from his savings or inheritance. Moreover, his evidence consisted of nonprobative self-generated documents, i.e., documents that he composed showing the alleged source of the funds. However, these self-generated documents lacked independent verification from a bank or savings account. The back lot was community property, the funds used to purchase it were from the parties' business revenues, and Frederick was found to be at fault in the breakup of the marriage. Therefore, the trial court did not abuse its discretion in awarding Dena a disproportionate percentage of the net sales proceeds from the back lot. Frederick's ninth issue is overruled.

## SPOUSAL SUPPORT

In his eighth issue, Frederick argues that the trial court abused its discretion by awarding Dena a judgment of $8,000.00 against him to satisfy the temporary orders because he had no ability to pay.

### Applicable Law

While a suit for dissolution of a marriage is pending and on the motion of a party, the court may render an appropriate order as deemed necessary and equitable, including requiring payments for the support of either spouse. TEX. FAM. CODE ANN. § 6.502 (West 2006). The trial court has broad, though not unlimited, discretion in making temporary support orders during the course of divorce proceedings, and the trial court's order will not be disturbed absent an abuse of that discretion. *See Herschberg v. Herschberg*, 994 S.W.2d 273, 278 (Tex. App.—Corpus Christi 1999, orig. proceeding); *Villasenor v. Villasenor*, 911 S.W.2d 411, 420 (Tex. App.—San Antonio 1995, no writ); *Florence v. Florence*, 388 S.W.2d 220, 224 (Tex. Civ. App.—Tyler 1965, writ dism'd).

A temporary support order is a means of protecting the welfare of a financially dependent spouse between the time a petition is filed and divorce is granted. ***Herschberg***, 994 S.W.2d at 277-78. It is not a property right, but is to be determined considering the needs of the applicant. ***Id***. at 278. Therefore, temporary support should be awarded based on considerations of both the degree to which the applicant is destitute of means to pay for her necessities during the pendency of the suit, and the ability of the requested spouse to pay. ***Id***.

The violation of temporary orders for spousal support is a factor that a trial court may consider in effecting a "just and "right" division of the community estate. *See **Jones v. Jones***, 699 S.W.2d 583, 585 (Tex. App.–Texarkana 1985, no writ). To effectuate its award, the trial court may consider a money judgment in the final divorce decree. *See **id***.

## Analysis

The trial court held a hearing on Dena's request for temporary spousal support. Dena testified that she did not receive any financial assistance or support from Frederick after they separated in 2012. Dena had monthly expenses of approximately $1,500.00 for necessities and utilities, and had to take out two bank loans totaling $15,000.00 to pay for past living and medical expenses. Her monthly payments for the loans were over $300.00. Additionally, Dena had monthly medical expenses of $250.00 and laboratory expenses of $400.00 every six weeks. She stated that she was a marketing consultant and had a jewelry business before taking a nine-year hiatus to work for Frederick's business. She worked after she and Frederick separated, but her emotional state and inability to focus prevented her from being able to work steadily.

According to Dena, Frederick had sources of income or access to funds. She said that he had a retirement fund or pension from his twenty-six years in the oil and gas field. Frederick stated that his pension fund was split between him and his ex-wife and that his ex-wife had "custody" of the account. He testified that they shared his monthly pension, $3,500.00, and that he agreed to take only about $1,400.00 a month as his share. Of that amount, he transferred approximately $1,000.00 a month to himself and the rest to a UK account. Frederick stated that all of his financial accounts in the United States were closed, although two accounts had balances totaling $1,200.00. He stated that his assets include his share in the parties' residence, his pension, and his motor vehicles.

According to Dena, Frederick had additional assets in the UK and admitted that he hid money and other assets in the UK from her. He had returned to live with his ex-wife and receive

10

medical treatment in the UK after he and Dena separated. Frederick testified that his ex-wife received all of his UK assets in their divorce including a severance or "redundancy" lump sum payment. He believed that the lump sum amount was approximately $200,000.00 and was used to raise his children and grandchildren. He testified that if he needed money, his ex-wife would wire him funds from this account. Frederick said that the pension fund account was overdrawn. However, he appeared to confuse the amount of money left in the severance account with the pension fund account, stating that the "account" was overdrawn and that he was waiting for the next pension installment. Dena stated that Frederick could earn at least $20,000.00 a month as a consultant for the oil and gas industry. She admitted that she did not know if he was working at the time of the hearing and believed that his last contract was in May 2011. Frederick stated that he tried to keep working, but he has memory issues from a series of strokes.

At the conclusion of the hearing, the trial court found that Dena was not working because of health problems and medical bills. It found Frederick and his ex-wife had access to a pension worth approximately $45,000.00, and that he was living in the UK with his ex-wife, had access to medical care in the UK, was supporting himself, and owned an interest in the residence and the back lot. According to the court, Frederick's lifestyle showed that he had resources or assets, that he was the "breadwinner," and that he supported Dena both before and after their marriage. Based on the evidence, the court found that Frederick had resources of $1,400.00 each month. The trial court signed temporary orders directing Frederick to pay Dena $2,000.00 monthly as temporary spousal support beginning in April 2014. Ultimately, however, the court found that Frederick failed to make any payments. In the final divorce decree, the court awarded Dena a judgment against Frederick for $8,000.00 to satisfy the temporary orders, "[f]or the purpose of a just and right division of property made in [the] decree."

The evidence shows Dena was without means to pay for her necessities and medical expenses during the pendency of the suit and that Frederick had resources and assets from his pension fund, severance account, and homes of more than $3,500.00 a month. Therefore, the trial court did not abuse its discretion in awarding Dena temporary spousal support in the amount of $2,000.00 per month. Frederick did not pay any of the awarded support. Therefore, the trial court also did not abuse its discretion in considering the award in the division of the community estate and awarding Dena a judgment of $8,000.00 against Frederick in order to satisfy the temporary orders. *See Jones*, 699 S.W.2d at 585. Frederick's eighth issue is overruled.

## "DISREGARDED" EVIDENCE

In his fifth issue, Frederick argues that the trial court abused its discretion by "disregarding" uncontradicted evidence that Dena committed fraud on the community estate. He complains that Dena used community funds to improve the residences of her mother and her aunt without his knowledge or consent. In his sixth issue, he contends that the trial court abused its discretion by "disregarding" evidence that Dena received substantial benefits during the marriage. He argues that he paid Dena's student loans with his income.

At trial, Dena testified that the parties decided to repair her aunt's house while the aunt was in the hospital. According to Dena, Frederick assisted her in repairing her aunt's house. Frederick testified that Dena told him she was replacing the roof of her mother's house but he did not know she was taking out a loan and using community funds to pay for it. However, Frederick's evidence to show Dena's loan and repair of her aunt's house lacks probative value because it is a self-produced document, i.e., a document that he composed showing the alleged loan and payments. Frederick's self-produced document did not contain independent verification of a loan document or loan payments made by Dena. He produced checks that he said showed funds Dena used to renovate her aunt's house. But there is no documentation showing what these funds were used to pay, such as invoices showing repairs made to her aunt's house. Frederick also claimed that he made payments on Dena's student loans, using his income. Again, his evidence is not proper because it is a self-produced document.

The trial court was free to believe Dena's testimony and disbelieve Frederick's. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (factfinder "may choose to believe one witness and disbelieve another"). The trier of fact cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. *See id.* at 820. Because the trier of fact is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *See Garner v. Garner*, 200 S.W.3d 303, 308 (Tex. App.—Dallas 2006, no pet.), *overruled on other grounds by Iliff*, 339 S.W.3d at 78; *see also In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that trial court is best able to observe and assess witnesses' demeanor and credibility and to sense "forces, powers, and influences" that may not be apparent merely from reading the record on appeal). Frederick's fifth and sixth issues are overruled.

## DISPOSITION

Having overruled Frederick's nine issues, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 30, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 30, 2015**

**NO. 12-14-00336-CV**

**FREDERICK DAWSON GRAHAM,**
Appellant
V.
**DENA MARIE TURNER,**
Appellee

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. C1228635)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **FREDERICK DAWSON GRAHAM**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*