**Opinion issued May 27, 2021**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

## NO. 01-19-00465-CV

———————————

**JOAQUIN OSPINA, A/K/A JOAQUIN OSPINA RETAVISCA, Appellant**

**V.**

**NICOLE STEFANY GARCIA FLOREZ, Appellee**

---

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-76410**

---

## MEMORANDUM OPINION

In this divorce case between appellant Joaquin Ospina and appellee Nicole

Stefany Garcia Florez, trial began in September 2018 in the 309th District Court of

Harris County. Following the 2018 general election, a new presiding judge took

office on January 1, 2019. The new trial judge started the trial over in May 2019, and after hearing testimony, rendered a divorce decree dissolving the marriage on grounds of cruelty.

In three issues on appeal, Ospina argues that (1) the trial court deprived him of due process of law when it treated the May 2019 proceeding as a new trial without advance notice to the parties; (2) if the May 2019 proceeding was not a new trial, then the court improperly made a substantive legal determination based on facts and evidence heard by the former presiding judge at the September 2018 proceeding; and (3) the court erred by failing to file findings of fact and conclusions of law, which prevented Ospina from properly presenting his case to this Court. We affirm.

**Background**

Ospina and Garcia Florez married in April 2017. They have no children together. In November 2017, Ospina filed for divorce and alleged that the marriage had become insupportable. In February 2018, Garcia Florez filed a counter-petition for divorce, alleging that the marriage had become insupportable and that Ospina had engaged in cruel treatment.

*A.    September 2018 Proceeding*

On September 17, 2018, trial began before the Honorable Sheri Dean, then the presiding judge of the 309th District Court of Harris County. Two witnesses testified on this date: Ospina and Garcia Florez.

The parties generally testified about when they started dating and the beginning of their marriage. At the time the parties married in April 2017, Ospina already had a roommate, and Garcia Florez could not be added to his lease. The parties therefore did not live together. Aside from each party's personal effects, the only property they had was a computer. The parties disputed the ownership of this computer and who had paid for it.

Ospina testified about two incidents that occurred in October 2017. During the first incident, the parties got into an argument while at Ospina's apartment, and Garcia Florez stated that she was going to take the computer. She started to pack the computer with her belongings. Ospina told her that she could not take the computer because it was his and he was making payments on it, and he "pulled her out of the room." Garcia Florez called the police, and Ospina was arrested on assault charges. Ospina denied hitting Garcia Florez at that point or at any other point. A few days later, Garcia Florez went to Ospina's apartment while he was still in custody and took the computer. Ospina filed a police report concerning the computer. After Ospina testified, he rested his case-in-chief.

Garcia Florez testified that Ospina had engaged in domestic violence against her on multiple occasions, not just during the October 2017 incident involving the computer. After the October incident, Garcia Florez called the police and obtained a

protective order. Garcia Florez testified that when she picked up the computer from Ospina's apartment, the police were with her and she had authorization to be there.

During Garcia Florez's testimony, her counsel mentioned that "a recording" existed, but neither party's counsel had heard the recording. Garcia Florez's counsel requested a break to listen to the recording "[a]t the appropriate time before [she] close[s]." Garcia Florez did not rest her case in chief, and no cross-examination of Garcia Florez occurred at this proceeding. The trial court went off the record and then adjourned the proceedings.

In early November 2018, Harris County voters elected a new presiding judge for the 309th District Court. On January 1, 2019, the Honorable Linda Marie Dunson took office.

### B.    *May 2019 Proceeding*

On May 13, 2019, Judge Dunson called the case for trial. Ospina started to testify concerning ownership of the computer and payments made on the computer. The trial court stated its understanding that the parties had reached an agreement concerning the computer. Ospina's counsel stated on the record that the parties had agreed that Garcia Florez would pay Ospina nearly $1,000 for the computer; Ospina would not seek recovery of the computer from Garcia Florez; and Ospina would assume the outstanding debt on the computer. The following exchange then occurred:

4

| The Court: | Okay. So—and the only outstanding issue in this case is grounds for divorce? |
| [Ospina's counsel]: | Yes, your Honor. |
| The Court: | Okay. The parties are excused. Just sit for a minute and we'll proceed on the trial on the grounds of the divorce. Okay. You're excused. |

The trial court and counsel for both parties held a discussion off the record. The parties agree that, during this off-the-record discussion, Judge Dunson stated that she had not read the transcript from the September 2018 proceeding and the parties were essentially starting over. Neither party raised any objection on the record to starting the trial over.

Ospina called his roommate, Juan Camilo Lopez, as a witness. Lopez testified that he arrived home one day in October 2017 to find Garcia Florez, a member of her family, and police officers present. Officers prevented Lopez from going inside the apartment while Garcia Florez removed belongings from Ospina's room. Lopez, who had lived with Ospina for around three years, never saw Ospina and Garcia Florez have a physical altercation. Nevertheless, he did see them have arguments and yell at each other.

Ospina testified that he and Garcia Florez married in April 2017, and that it is not possible for them to remain married. He testified that he and Garcia Florez would have verbal arguments, but they were never involved in a physical altercation or anything "aggressive." Ospina testified concerning the incident that occurred in

5

October 2017 involving the computer and his arrest. Ospina stated that, during this incident, he grabbed Garcia Florez's arm and "took her out of the room," but he denied hitting her. Ospina asked the trial court to make a finding that he had not engaged in cruel treatment of Garcia Florez.

Garcia Florez testified that Ospina became violent towards her two to three weeks after they got married, and she gave examples of his conduct. Garcia Florez testified about three instances of domestic violence, including the October 2017 incident with the computer. Her testimony, although more detailed at this proceeding, was largely consistent with her testimony from the September 2018 proceeding. The trial court admitted three exhibits purporting to be photographs taken after instances of domestic violence by Ospina against Garcia Florez. Garcia Florez had not offered these exhibits at the September 2018 proceeding. The trial court also admitted a copy of the information charging Ospina with assault arising out of the October 2017 incident. Garcia Florez also testified that Ospina emotionally abused her and had "conversations with other women."

Garcia Florez's aunt, Sandra Florez, also testified. She never personally saw Ospina behave violently toward Garcia Florez, but she did see bruises and marks on Garcia Florez's arms. Florez was present at Ospina's apartment while Garcia Florez was talking to the police following the October 2017 incident. She also testified that Ospina would not provide for Garcia Florez, and that she and other family members

sometimes needed to take Garcia Florez to the store because Ospina would not let her go.

At the close of trial, the trial court granted the parties a divorce on the ground of cruelty, and the court later signed a written divorce decree memorializing that finding. Ospina requested that the trial court file findings of fact and conclusions of law. When the trial court did not do so, Ospina filed a notice of past-due findings and conclusions.

Ospina also moved for a new trial. In this motion, Ospina argued that the trial court erred by "holding all testimony and evidence adduced at the September 17, 2018 partial trial for naught without any advanced notice to" Ospina. He argued that the court's decision at the May 2019 proceeding to start over "constituted a *sua sponte* motion for new trial," and he had no opportunity to prepare for a new trial. Ospina argued that this decision by the trial court violated his due process rights. This motion was overruled by operation of law. This appeal followed.

**Restarting the Trial**

Ospina argues that the trial court effectively granted a new trial at the May 2019 proceeding without stating reasons for doing so on the record, running afoul of the Texas Supreme Court's decision in *In re Columbia Medical Center* and its progeny. *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204 (Tex. 2009) (orig. proceeding); *see also In re Toyota Motor Sales, U.S.A., Inc.*,

7

407 S.W.3d 746 (Tex. 2013) (orig. proceeding); *In re United Scaffolding, Inc.*, 377 S.W.3d 685 (Tex. 2012) (orig. proceeding). That line of cases holds that a trial court must give clear, specific, and valid reasons whenever it grants a new trial following a jury verdict. *See, e.g.*, *In re Toyota Motor Sales*, 407 S.W.3d at 759. Ospina urges this Court to extend *In re Columbia Medical Center* to situations like this, where the trial court restarts a bench trial prior to judgment.

By contrast, Garcia Florez argues that the trial court did not grant a new trial, noting that the Rules of Civil Procedure applicable to motions for new trial reference setting aside a judgment and ordering a new trial. *See, e.g.*, TEX. R. CIV. P. 320. In this case, Judge Dean did not render judgment at the September 2018 proceeding or at any time thereafter. According to Garcia Florez, Judge Dean adjourned the case prior to judgment, and Judge Dunson restarted the case upon being elected to the bench.

We agree with Garcia Florez that the *In re Columbia Medical Center* line of cases does not control here. *In re Columbia Medical Center* addressed a scenario where the trial court had set aside a jury verdict and granted a new trial after the jury had already reached a verdict following a four-week trial. *See In re Columbia Med. Ctr.*, 290 S.W.3d at 206. The trial court gave no reason for its decision, except that the decision was "in the interests of justice and fairness." *Id.*

8

The Texas Supreme Court held that this was an insufficient explanation for setting aside a jury verdict. In so holding, the court reasoned that "[j]ury trials are essential to our constitutionally provided method for resolving disputes when parties themselves are unable to do so." *Id.* at 211. The court further acknowledged that, historically, trial courts have had the discretion to grant new trials "in the interest of justice." *Id.* at 213. Nevertheless, the court ultimately concluded that

> such a vague explanation in setting aside a jury verdict does not enhance respect for the judiciary or the rule of law, detracts from transparency we strive to achieve in our legal system, and does not sufficiently respect the reasonable expectations of parties and the public when a lawsuit is tried to a jury. Parties and the public generally expect that a trial followed by a jury verdict will close the trial process. Those expectations may be overly optimistic, practically speaking, but the parties and public are entitled to an understandable, reasonably specific explanation why their expectations are frustrated by a jury verdict being disregarded or set aside, the trial process being nullified, and the case having to be retried.

*Id.* Finding that the "protection of the right to jury trial" had created exceptional circumstances, *id.* at 209, the court granted conditional mandamus relief requiring the trial court to give a more detailed explanation for its order. *Id.* at 215.

This case does not involve the same concerns that *In re Columbia Medical Center* presented. This is not a situation in which the trial court granted a motion for new trial and set aside a jury verdict without stating its reasons beyond "in the interests of justice and fairness." Rather, the divorce case was tried to the bench, not a jury. Furthermore, whereas a motion for new trial is a "direct attack" on an existing

9

judgment, *see PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012), no judgment was in place at the time that Judge Dunson restarted the trial. The restart appears to have been designed to allow Judge Dunson to hear all the evidence firsthand, and for good reason. As we recently held, a "judge who did not preside over some or all the trial may make substantive legal decisions, but only if the decision does not require the judge to find facts based on evidence that [s]he has not heard." *Lyon v. Bldg. Galveston, Inc.*, No. 01-19-00571-CV, 2020 WL 7391705, at *4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2020, no pet. h.) (citations omitted).

Given these distinctions, we conclude that *In re Columbia Medical Center* does not govern this case. *See In re J.C.*, No. 14-18-00904-CV, 2018 WL 5797366, at *2 (Tex. App.—Houston [14th Dist.] Nov. 6, 2018, orig. proceeding) (mem. op.) (per curiam) ("Relators offer no argument to explain why standards developed specifically for the grant of a new trial after a jury verdict apply to a trial court's grant of a new trial following a bench trial in a parental-termination proceeding."); *see also In re Toyota Motor Sales*, 407 S.W.3d at 762–63 (Lehrmann, J., concurring) ("Both *Columbia* and our subsequent opinion in *In re United Scaffolding* focused on transparency in the context of setting aside jury verdicts, noting the importance of ensuring that trial courts do not impermissibly substitute their judgment for that of the jury. This concern, however, is not present with respect to new-trial orders that

10

do not set aside a jury verdict, such as orders issued after a bench trial or setting aside a default judgment." (internal citations omitted)).

Ospina further argues that the trial court's decision to restart the trial deprived him of due process because he did not have notice that the court intended to try the entire case again, and he did not have time to prepare for the new trial. Garcia Florez responds that Ospina's allegations of harm and lack of notice are not supported by the record. She points out that the record contains multiple notices re-setting the trial date; Ospina filed a motion in limine—a motion that is typically filed pre-trial—in March 2019; Ospina's motion in limine requested that the court order Garcia Florez not to mention any arrests or convictions of Ospina and order Garcia Florez to provide a witness and exhibit list; and Ospina filed a witness and exhibit list days before the May 2019 proceeding began. She further argues that Ospina did not preserve his due process argument for appellate review because Ospina did not object to the trial court's proposed procedure, and he did not raise a due process argument until his motion for new trial after the trial court rendered the divorce decree.

We agree with Garcia Florez that Ospina did not preserve his notice-based and due process arguments for appellate review. To preserve a complaint for appellate review, the record must demonstrate that the complaining party made his complaint to the trial court by timely request, objection, or motion that stated the

11

grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a). The record must also demonstrate that the court either ruled on the request or refused to rule and the complaining party objected to the refusal. *Id.*; *First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 337 (Tex. App.—Dallas 2011, pet. denied) ("An objection is timely urged when asserted at either the earliest opportunity or when the potential error becomes apparent."). Even constitutional arguments may be waived by failure to raise the complaint at trial. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003).

Ospina waived any due process argument by failing to object in the trial court. The parties agree that at the May 2019 proceeding, the trial court stated its intention to restart the trial off the record. When the proceeding resumed on the record, Ospina made no objection to restarting trial. He did not object on the bases that he had not received sufficient notice that the trial court intended to restart the trial, that this procedure constituted an improper granting of a motion for new trial, or that this procedure violated his due process rights. The record contains no indication that this procedure caused any surprise or prejudice to Ospina. Ospina did not request a continuance to prepare for giving his testimony again or for cross-examining Garcia Florez.

Raising these objections prior to the trial restarting would have alerted the trial court to any potential problems with the proposed procedure and would have allowed

12

the trial court to grant relief—namely, a continuance—to ameliorate those concerns. But Ospina did not raise these objections until after the trial court rendered the divorce decree. Consequently, we conclude that Ospina did not preserve these complaints for appellate review. *See* TEX. R. APP. P. 33.1(a); *In re B.L.D.*, 113 S.W.3d at 350 ("Requiring parties to raise complaints at trial conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds.").

We overrule Ospina's first issue.

### Decision Based on Evidence Heard by Prior Judge

In his second issue, Ospina argues in the alternative that the trial court erred in rendering the divorce decree because the court made a legal determination based on facts and evidence heard by the prior presiding judge.

"The rules of practice and procedure in civil district court allow judges to exchange courts and transfer cases from one court to another." *Malone v. PLH Grp., Inc.*, 570 S.W.3d 292, 294–95 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Masa Custom Homes, LLC v. Shahin*, 547 S.W.3d 332, 335 (Tex. App.—Dallas 2018, no pet.)); TEX. R. CIV. P. 330(e). The rules also permit a practice in which one trial judge hears part of a case and determines some issues while another trial judge completes the case. *Malone*, 570 S.W.3d at 295; *Masa Custom Homes*, 547 S.W.3d at 335; TEX. R. CIV. P. 330(g) ("When in such counties there are two or

13

more district courts having civil jurisdiction, any judge may hear any part of any case or proceeding pending in any of said courts and determine the same, or may hear and determine any question in any case, and any other judge may complete the hearing and render judgment in the case."); *see also* TEX. R. CIV. P. 18 (addressing continuation of court business after trial judge dies, resigns, or becomes disabled during court's term).

A trial judge may sign a judgment in accordance with a jury verdict even though the judge did not preside over the trial. *Masa Custom Homes*, 547 S.W.3d at 336; *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 734 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). A trial judge who did not preside over a bench trial may sign the final judgment "so long as the written judgment merely memorializes an earlier final judgment rendered by the judge who heard the evidence." *Masa Custom Homes*, 547 S.W.3d at 336. Additionally, a trial judge may make substantive legal determinations in a case in which he did not preside over some or all of the trial "so long as the decision does not require the judge to find facts based on evidence he has not heard." *Id.* The Rules of Civil Procedure do not, however, "authorize a judge to render judgment following a bench trial unless he personally heard the evidence on which the judgment is based." *Id.*; *see Malone*, 570 S.W.3d at 295 ("[N]either the rules nor case law permit one judge to preside over

14

the entire bench trial and a visiting judge, who heard no evidence, to render a judgment based on disputed facts.").

In a bench trial, the trial judge observes the demeanor of the witnesses and weighs the evidence. *Malone*, 570 S.W.3d at 295; *Masa Custom Homes*, 547 S.W.3d at 337 ("Only the judge who presides over the bench trial can see and observe the witnesses' mannerisms, reactions, and demeanor."). "Drawing on these observations, the presiding judge, acting as factfinder, determines the facts from the disputed evidence." *Malone*, 570 S.W.3d at 295; *Masa Custom Homes*, 547 S.W.3d at 337 ("[The presiding judge] alone can determine the impact of the evidence and weigh the success and force of impeachment by cross-examination through careful observation.").

Because of the differences in reading the record and presiding over the trial, "courts have recognized the narrow, but essential exception to the otherwise relatively free exchange of benches provided for by the rules and the constitution: a judge who did not hear the evidence in a bench trial cannot thereafter read the trial record and then render judgment in the case." *Masa Custom Homes*, 547 S.W.3d at 337; *see Malone*, 570 S.W.3d at 295 ("Another judge exercising a judicial role in the same court is not authorized to render judgment without hearing any of the evidence on which the judgment is based."); *see also Lyon*, 2020 WL 7391705, at *4, 7 (holding that trial court's judgment was void because trial court rendered

15

judgment on attorney fees based on transcript of previously admitted evidence, when judge had not personally heard any evidence regarding amount of reasonable and necessary attorney fees and evidence from prior proceeding raised disputed fact questions).

In this case, Judge Dean heard approximately forty pages of testimony from Ospina and Garcia Florez at the September 2018 proceeding. The parties testified concerning the start of their relationship and marriage, ownership of the computer, the October 2017 incident, Garcia Florez's taking of the computer after the October 2017 incident, and two other instances of alleged domestic violence.

At the May 2019 proceeding before Judge Dunson, the parties stipulated that they had reached an agreement concerning the computer and this agreement was stated on the record. Ospina and Garcia Florez testified at this proceeding, as did Lopez and Florez. The witnesses testified concerning the dating relationship between the parties, the October 2017 incident, Garcia Florez's return to Ospina's apartment after that incident, and other instances of alleged domestic violence. Ospina's and Garcia Florez's testimony in the September 2018 and May 2019 proceedings was not identical, but they testified to the same topics before Judge Dunson.

Although Judge Dunson did not preside over all the proceedings in this case, she heard evidence concerning the parties' marriage, their testimony that the

16

marriage was insupportable, and evidence of domestic violence before rendering a divorce decree that dissolved the marriage on the basis of cruelty. Evidence of domestic violence can support a divorce based on cruelty. *See Newberry v. Newberry*, 351 S.W.3d 552, 557 (Tex. App.—El Paso 2011, no pet.). Judge Dunson therefore "personally heard the evidence on which the judgment [was] based." *See Masa Custom Homes*, 547 S.W.3d at 336. Judge Dunson observed the witnesses and their demeanor while testifying, heard disputed testimony concerning domestic violence allegations, and weighed the evidence to "determine[] the facts from the disputed evidence." *See Malone*, 570 S.W.3d at 295.

We conclude that Judge Dunson did not impermissibly render judgment based on evidence that she did not personally hear. *See id.*; *Masa Custom Homes*, 547 S.W.3d at 336–37.

We overrule Ospina's second issue.

**Failure to File Findings of Fact and Conclusions of Law**

Finally, in his third issue, Ospina contends that the trial court erred by failing to file findings of fact and conclusions of law. He argues that the trial court's failure harmed him because, without the findings and conclusions, "it is impossible to know what testimony the trial court believed and what acts or omissions the trial court found were cruel." As a result, he cannot attack the sufficiency of the evidence to support the trial court's findings and properly present his case to this Court.

17

In a bench trial, "any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296; *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam). The party must make this request within twenty days after the trial court signs the judgment. TEX. R. CIV. P. 296. The trial court shall file its findings and conclusions within twenty days after a timely request is filed. TEX. R. CIV. P. 297. If the trial court fails to file timely findings and conclusions, the party making the original request shall, within thirty days of his original request, file a notice of past due findings of fact and conclusions of law. *Id.*; *Ad Villarai*, 519 S.W.3d at 137 (stating that party waives right to challenge court's failure to file findings if it does not file notice of past due findings as required by Rule 297).

If the trial court fails to file findings and conclusions in response to a proper and timely request, we must presume the trial court made all the findings necessary to support the judgment. *Ad Villarai*, 519 S.W.3d at 135 (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). A party may rebut this presumption by demonstrating that the evidence in the record does not support a presumed finding. *Id.*; *Harris Cty. v. Ramirez*, 581 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Fact findings are not necessary when the matters in question are not disputed. *Ad Villarai*, 519 S.W.3d at 135 (quoting *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006)).

If a trial court fails to file findings when the facts are disputed, "the burden of rebutting every presumed finding can be so burdensome that it effectively 'prevent[s the appellant] from properly presenting its case'" to the appellate court. *Id.* (quoting *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam)). A trial court's failure to file findings and conclusions in response to a proper request "is thus 'presumed harmful, unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury.'" *Id.* (quoting *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)); *Ramirez*, 581 S.W.3d at 427 ("When a party is not prevented from properly presenting its case to the court of appeals, the failure to file findings and conclusions is harmless.").

The general rule is that a trial court's failure to file findings and conclusions harms an appellant if, under the circumstances of the case, he is forced to guess the reason why the trial court ruled against him. *Liberty Mut. Fire Ins. v. Laca*, 243 S.W.3d 791, 794 (Tex. App.—El Paso 2007, no pet.); *Larry F. Smith, Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied). If there is only a single ground of recovery or a single defense in the case, the record demonstrates that the appellant has suffered no harm from the failure to file findings because he is not forced to guess the reasons for the trial court's judgment. *Pham v. Harris Cty. Rentals, L.L.C.*, 455 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Liberty Mut. Fire Ins.*, 243 S.W.3d at 794; *Larry F. Smith, Inc.*, 110

19

S.W.3d at 614. However, in a case in which there are multiple grounds for recovery or multiple defenses, an appellant is forced to guess what the trial court's findings were, unless the findings are provided to him. *Pham*, 455 S.W.3d at 706; *Liberty Mut. Fire Ins.*, 243 S.W.3d at 794; *Larry F. Smith, Inc.*, 110 S.W.3d at 614; *see Fraser v. Goldberg*, 552 S.W.2d 592, 594 (Tex. App.—Beaumont 1977, writ ref'd n.r.e.) ("Undoubtedly, there are situations in which findings and conclusions are necessary in order for the appellant to present his case. In factually complicated situations in which there are two or more possible grounds for recovery or defense, an undue burden would be placed upon an appellant.").

Putting an appellant in the position of having to guess the reasons for the judgment rendered against him defeats the purpose of Rules 296 and 297, which allow a request for findings and conclusions to "narrow the bases of the judgment to only a portion of [the multiple] claims and defenses, thereby reducing the number of contentions that the appellant must raise on appeal." *Pham*, 455 S.W.3d at 706 (quoting *Larry F. Smith, Inc.*, 110 S.W.3d at 614). Without findings that narrow the bases for the judgment, an appellant must "broaden his appeal to attack all possible findings the trial court conceivably could have made." *Larry F. Smith, Inc.*, 110 S.W.3d at 614.

The Family Code provides that a trial court "may grant a divorce in favor of one spouse if the other spouse is guilty of cruel treatment toward the complaining

spouse of a nature that renders further living together insupportable." TEX. FAM. CODE ANN. § 6.002. A spouse's conduct rises to the level of cruel treatment when their conduct renders the couple's living together insupportable. *Ayala v. Ayala*, 387 S.W.3d 721, 733 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Newberry*, 351 S.W.3d at 557. "'Insupportable' for purposes of 'cruel treatment,' means incapable of being borne, unendurable, insufferable, or intolerable." *Ayala*, 387 S.W.3d at 733 (citing *Henry v. Henry*, 48 S.W.3d 468, 473–74 (Tex. App.—Houston [14th Dist.] 2001, no pet.)); *Newberry*, 351 S.W.3d at 557. "Abuse need not be limited to bodily injury; nonetheless, physical abuse will support granting a divorce on cruelty grounds." *Newberry*, 351 S.W.3d at 557; *In re Marriage of Rice*, 96 S.W.3d 642, 649–50 (Tex. App.—Texarkana 2003, no pet.) (holding that wife's testimony that husband had physically abused her on several occasions in past was sufficient evidence to support trial court's findings of cruel treatment).

The record of the May 2019 proceeding reflects that the parties entered into a stipulation concerning the disputed ownership of the computer. Garcia Florez agreed to pay Ospina nearly $1,000 for the computer, and Ospina agreed that he would not seek recovery of the computer from Garcia Florez. After this agreement was stated on the record, Ospina's counsel agreed with the trial court that the only outstanding issue remaining was "grounds for divorce." Both Ospina and Garcia Florez testified

21

that the marriage was insupportable and there was no chance of reconciliation; insupportability was therefore undisputed at trial.

Garcia Florez had also alleged cruelty as a fault-based ground for divorce. This was the only disputed ground for divorce presented to the trial court, and the court, in the written divorce decree, dissolved the marriage on cruelty grounds. Garcia Florez presented testimony that Ospina had engaged in domestic violence, and she testified to three specific instances in which he had physically abused her. Florez testified that she never saw Ospina abuse Garcia Florez, but she did witness marks and bruises on Garcia Florez. Ospina disputed her characterization of these incidents and denied ever hitting Garcia Florez. The evidence consisted of less than 100 pages of testimony, the information charging Ospina with assault arising out of the October 2017 incident, and four pictures purporting to show injuries Ospina caused to Garcia Florez.

This is not a case with a voluminous factual record, multiple grounds for recovery, or multiple defenses. Although the facts are disputed, this case involved only one disputed ground for divorce: cruelty. The only question before the trial court at the May 2019 proceeding was whether Ospina had engaged in cruel treatment towards Garcia Florez that "render[ed] further living together insupportable." *See* TEX. FAM. CODE ANN. § 6.002. Garcia Florez presented evidence that Ospina had engaged in domestic violence towards her, which supports

granting a divorce on the basis of cruelty. *See Newberry*, 351 S.W.3d at 557 ("[P]hysical abuse will support granting a divorce on cruelty grounds."); *Marriage of Rice*, 96 S.W.3d at 649–50 (concluding that sufficient evidence existed to support finding of cruelty when wife testified husband had physically abused her on four occasions).

On appeal, Ospina does challenge the sufficiency of the trial court's implied findings on cruelty, but that does not compel a conclusion that he was *prevented* from doing so by the trial court's failure to file findings of fact. This is not a situation in which Ospina was required to guess at the reasons for the trial court's judgment. Even without the benefit of specific fact findings concerning which acts the trial court found constituted cruel treatment, this is not a factually complicated case, and challenging the trial court's implied factual findings on cruelty in this case does not place an undue burden on Ospina. Assuming that the trial court found that all three incidents of domestic violence testified to by Garcia Florez occurred, challenging the sufficiency of the evidence of these implied findings is not "so burdensome" that it effectively prevented Ospina from properly presenting his case to this Court. *See Ad Villarai*, 519 S.W.3d at 135.; *see also Reisler v. Reisler*, 439 S.W.3d 615, 620 (Tex. App.—Dallas 2014, no pet.) (stating that trial court's obligation "is to make findings of fact and conclusions of law on the ultimate or controlling issues, but not on evidentiary issues").

We therefore conclude that the trial court's failure to file findings and conclusions, while erroneous, did not harm Ospina. *See Ad Villarai*, 519 S.W.3d at 135; *Pham*, 455 S.W.3d at 706 ("[W]hen there is only a single ground of recovery or a single defense, the appellant suffers no harm [from the failure to file findings of fact] because the reason for the trial court's judgment is clear, and the appellate court does not have to guess the reason for the trial court's decision.").

We overrule Ospina's third issue.

## Conclusion

We affirm the judgment of the trial court.


April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.